IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF COLORADO

Civil Action No. 1:24-cv-1813

REPORTHOST LLC,

       Plaintiff

v.

SPECTORA INC.,

       Defendant

---

COMPLAINT FOR BREACH OF CONTRACT, COPYRIGHT INFRINGEMENT, FALSE ASSOCIATION, COLORADO CONSUMER PROTECTION ACT, AND INJUNCTIVE RELIEF

**JURY TRIAL DEMANDED**

---

Plaintiff ReportHost LLC asserts the following claims against Defendant Spectora, Inc.

## <u>NATURE OF THE ACTION</u>

1.    Plaintiff ReportHost LLC ("ReportHost") is a Washington limited liability company and a nationally recognized leader in home inspection software. ReportHost develops and licenses software to support home inspectors drafting reports, and has authored more than 15,000 narratives for home inspectors' commercial use.

2.    ReportHost's innovative report-building template suites are available to its licensees through ReportHost's software platform. ReportHost's licensees are licensed to use ReportHost's software to access and use particular narrative elements from each of these

templates in building a home inspection report, saving home inspectors time in drafting their own narratives and ensuring the report is well-drafted and thorough.

3.    ReportHost filed an action on February 23, 2022 in the District of Colorado against Defendant Spectora Inc., a Colorado corporation providing home inspection tools to home inspectors ("Spectora" or "Defendant"), for infringing ReportHost's exclusive rights under the Copyright Act (17 U.S.C. § 101 *et seq.*), the Lanham Act (15 U.S.C. § 1051 *et seq.*), and Colorado's Consumer Protection Act (C.R.S. 6-1-101 *et seq.*).  The parties reached a settlement and that action was terminated on September 7, 2023.

4.    This is a new action against Defendant Spectora, for breaching the terms of the parties' settlement agreement, its duty of good faith and fair dealing, and for new acts of willful infringement of ReportHost's exclusive rights under the Copyright Act (17 U.S.C. § 101 *et seq.*), the Lanham Act (15 U.S.C. § 1051 *et seq.*), and Colorado's Consumer Protection Act (C.R.S. 6-1-101 *et seq.*), arising out of and in connection to Defendant's unauthorized use of ReportHost's copyrighted material.  Defendant committed willful and blatant acts of copyright infringement by improperly using and publishing ReportHost's narratives and creating derivative works without authorization for its own financial gain.

5.    ReportHost has been in communication with Defendant Spectora since the parties entered into a settled resolution and has informed Defendant Spectora of its breaches of that resolution.  On May 1, 2024, ReportHost sent a final cease and desist letter and offer for settlement to Defendant Spectora.  Even as late as Defendant Spectora's response letter dated May 27, 2024, Defendant refuses to acknowledge its breach of the terms of the settlement agreement, its failure to deal with ReportHost in good faith, and has refused to otherwise come into compliance or remedy its wrongdoing.  In its response, Defendant Spectora brought to light new breaches of the settlement agreement and ReportHost sent a demand to cure on June 14, 2024.  Defendant Spectora continues to fail to cure its breaches.

6.     Spectora's wrongful acts have caused ReportHost to suffer monetary damages. Additionally, ReportHost has suffered injury for which it has no adequate remedy at law, and should therefore be awarded injunctive relief to prevent Spectora from causing further reputational injury to ReportHost.

## PARTIES

7.     ReportHost is a limited liability company organized under the laws of the State of Washington, with its principal place of business at 10034 43rd Pl. NE, Seattle, WA 98125.

8.     ReportHost owns and controls the copyrights and exclusive rights in the software, templates, and corresponding narratives it produces and non-exclusively licenses.

9.     Specifically, ReportHost has obtained Certificates of Copyright Registration for 12 total works, including Registration Numbers TXu002195180 and TXu002195064 (the "Copyrighted Works").

10.     On information and belief, Defendant Spectora is a corporation formed and existing under the laws of the State of Colorado, with its registered and principal place of business at 1005 S. Gaylor St., Suite 210, Denver, CO 80209.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 17 U.S.C. § 501(b) because this is an action arising under the copyright laws and trademark laws of the United States, 17 U.S.C. § 101, *et seq.* and 15 U.S.C. § 1051, *et seq.*, seeking damages, injunctive, and other relief.

12.     This Court has supplemental jurisdiction over Plaintiff's state law causes of action because they arise from the same nexus of facts attributable to Defendant's violation of the copyright and trademark laws of the United States.

13.     This Court has personal jurisdiction over Spectora because it is a Colorado

company with its office and principal place of business at 1005 S. Gaylor St., Suite 210, Denver, CO 80209.

14.    Defendant transacts, conducts, and solicits business within Colorado. Defendant committed tortious acts within Colorado, or induced or assisted in the commission of Defendant's tortious acts within Colorado. On information and belief, Defendant may own, use, or possess property in Colorado.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## BACKGROUND FACTS

### Plaintiff ReportHost and its Copyrighted Works

16.    ReportHost is a nationally recognized leader in home inspector technology headquartered in Washington.

17.    ReportHost has spent years developing language that is suitable for inclusion in a home inspection report.  ReportHost has spent considerable time and effort in crafting language that is legible, informative, and professional.

18.    The Copyrighted Works comprise expressive content protected under the Copyright Act, 17 U.S.C. Section 101 *et seq*.

19.    As owner of the Copyrighted Works, ReportHost has the exclusive right to reproduce, distribute, and license the Copyrighted Works in the United States. The rights include the right to enforce the copyrights and pursue any available legal remedies against infringers of the Copyrighted Works.

20.    ReportHost licenses its software, templates, and associated narratives to customers to assist with completion of home inspection reports. Its products are instrumental in addressing the need for breadth of variety and detail in completing these reports in a timely, efficient, and accurate manner.

21.    ReportHost's data templates containing its proprietary home inspection

narratives are accessed through ReportHost's proprietary software package. This software package allows a licensee customer to choose from a menu of narratives that best suit the customer's needs in completing certain portions of a home inspector report. Based on the customer's decision, ReportHost's software populates a home inspection report by inserting these narratives into the report from the internal data template.

22.    ReportHost does not offer its templates for public consumption, or as stand-alone products to its licensees. ReportHost's customers must use ReportHost's software platform to choose a template and then select specific narratives to insert into the draft home inspection report.

23.    Critical to the success of its business, ReportHost protects its Copyrighted Works under the terms of a Terms of Service agreement ("TOS"). The TOS explicitly provides that ReportHost, as licensor, does not sell its templates or its narratives to its customers, and that ReportHost narratives are only accessible through ReportHost's software platform.

24.    In consideration of a customer's compliance with the terms of the TOS and payment of the license fee, ReportHost grants its legitimate customers, as licensees, a non-exclusive, non-sublicenseable, non-transferable, limited license to use the reports they generate through ReportHost's software and under the terms of the TOS.

25.    To safeguard its Copyrighted Works, ReportHost implements security measures to discover and deter unauthorized use.

26.    ReportHost has earned a good reputation by working with its licensees to deliver and maintain excellent solutions at fair prices.

27.    ReportHost offers access to its software platform and the license to use its narratives using established price lists. The pricing charged is a reasonable fee in the relevant marketplace.

28.    The Copyrighted Works contain expression wholly original to ReportHost and

consist of copyrightable subject matter under the U.S. Copyright Act, 17 U.S.C. Section 101 *et seq*.

29.     ReportHost has not provided authorization, permission, or consent to Defendant to use, reproduce, publish, or make derivative works from ReportHost's Copyrighted Works, or to exercise any other rights affecting ReportHost's copyrights with respect to the Copyrighted Works.

**Defendant Spectra**

30.     On information and belief, Defendant Spectra operates in the home inspection industry by providing a suite of tools to its home inspector clients ("Spectra's Clients") for these home inspectors to use in their business.

31.     On information and belief, one of these tools is access to a library of "templates" for Spectra's Clients to use in generating a home inspection report (the "Spectra Library").

32.     On information and belief, Defendant Spectra invites and encourages use of the data templates in the Spectra Library.

33.     On information and belief, the Spectra Library contains unauthorized copies of ReportHost's data templates.

34.     On information and belief, Defendant Spectra hosts home inspector reports authored by Spectra's Clients.

35.     On information and belief, Defendant Spectra encourages Spectra's Clients to create a "sample report" that may be viewed publicly by those interested in procuring the services of Spectra's Clients.

36.     On information and belief, Defendant Spectra encourages Spectra's Clients to upload an existing report (each an "Existing Report") to Defendant Spectra's platform that will serve as the basis for the "sample report."

37.     On information and belief, these "sample reports" are generated each time a

potential customer browses to the "sample report" website particular to each of Spectora's Clients.

38.     On information and belief, when the potential customer browses to this "sample report" website, Defendant Spectora makes a copy of the relevant Existing Report, edits certain information within that Existing Report, and then publicly displays the edited report (each a "Spectora Report").

39.     On information and belief, the substantive content of each Sample Report is the same as that of the Existing Report, and the only data Defendant Spectora removes from the copy it creates is related to personally identifiable information.

40.     On information and belief, Defendant Spectora maintains a database of all content found in the Existing Reports and the Spectora Library (the "Spectora Template Database").On information and belief, Defendant Spectora copies all data from templates uploaded into the Spectora Library to the Spectora Template Database.

41.     On information and belief, home inspection reports displayed on the Spectora platform are constructed by drawing from the Spectora Template Database.

**Defendant's Unlawful Conduct**

42.     Despite ReportHost's diligence to eliminate unlawful copying and distribution of its proprietary narratives, ReportHost's research has revealed that Defendant has engaged in unlawful and infringing conduct.

43.     On or about February 23, 2019, ReportHost received an anonymous tip via email that Defendant Spectora was hosting one or more of ReportHost's data templates in the Spectora Library.

44.     ReportHost contacted Spectora concerning this hosting, and Spectora informed ReportHost the offending data templates had been deleted from the Spectora Library.  Spectora did not reveal the existence of the Spectora Template Database at that time.

**The Library**

45.     On information and belief, the Spectora Library contains a limited number of data templates, each of which are incorporated by Defendant Spectora into the Spectora Template Database.

46.     On information and belief, Defendant Spectora offers the Spectora Library to its consumers for their use as part of its business.

47.     On information and belief, Defendant Spectora does not maintain individual templates in the Spectora Library, but instead these individual templates are created by Spectora from the Spectora Template Database when a user downloads or otherwise uses a template from the Spectora Library.

48.     On information and belief, Spectora customers use Copyrighted Works owned by ReportHost by accessing data templates in the Spectora Library.

**The Dispute and Settlement**

49.     In early 2020, ReportHost discovered a number of "sample reports" on Defendant Spectora's website that contained a large quantity of the content from ReportHost's data templates.

50.     On information and belief, these "sample reports" are generated by Spectora through an automated system that draws data, including the narratives containing copyrighted material owned by ReportHost, from actual reports that are stored on the Spectora system and provided to Spectora's Client's customers (collectively, the "Underlying Reports").

51.     ReportHost has consistently monitored Spectora's public displays of "sample reports" and the relevant Underlying Reports, evaluating each one to determine if they were copies of content in the ReportHost data templates.

52.     ReportHost contacted Spectora concerning the "sample report" infringement on the Spectora platform and Spectora intimated it would investigate a purchase of all of

ReportHost's assets and business to resolve the matter.  ReportHost and Spectora entered into a Non-Disclosure Agreement relative to this arrangement.

53.     As part of that arrangement, ReportHost made an offer to sell to Spectora.

54.     Spectora never responded to that offer.

55.     On February 23, 2022, after repeated attempts to resolve the matter, ReportHost commenced an action against Spectora in this Court.

56.     Some time later, on August 29, 2023, ReportHost and Spectora entered into a confidential settlement agreement that resolved the issues alleged in that action (the "Settlement Agreement").

57.     Notably, the Settlement Agreement did not provide for release of any claims arising after the effective date of the Settlement Agreement.

58.     Notably, Defendant Spectora agreed, as part of the Settlement Agreement, to delete templates from its platform containing ReportHost content.

59.     Defendant Spectora did not reveal to ReportHost the existence of the Spectora Template Database, that the templates in the Spectora Library were generated by Spectora from the Spectora Template Database and not simply hosted by users, or that templates uploaded to the Spectora Library were integrated by Spectora into the Spectora Template Database.

60.     On information and belief, Defendant Spectora deleted no templates from the Spectora Library.

61.     Instead, on information and belief, Defendant Spectora edited each of the templates in the Spectora Library by deleting only particular elements of the Spectora Template Database.

62.     On information and belief, the Spectora Template Database was not deleted by Spectora.

63.     Spectora continues to host "sample reports" and create them from relevant

Underlying Reports.

## The Takedowns

64.     ReportHost carefully evaluated and evaluates "sample reports" and, if there is any question concerning whether the offending "sample report" copies ReportHost's Copyrighted Works, ReportHost does not pursue action relevant to that particular "sample report."  ReportHost does the same to relevant Underlying Reports.

65.     If it is clear that a "sample report" reproduces the Copyrighted Works verbatim or near-verbatim, and to an appreciable degree, ReportHost drafts and submits a takedown request to Defendant Spectora that is compliant with the Digital Millennium Copyright Act.

66.     While Defendant Spectora does disable access for some reports relative to these takedown notices, Defendant Spectora does not immediately disable access for at least some of the "sample reports" and Underlying Reports implicated by these takedowns.

67.     For example, on April 10, 2024 ReportHost submitted a DMCA takedown notice concerning the sample report hosted at https://app.spectora.com/home-inspectors/a-handy-home-inspector/sample_report?sample_id=26358.  This is a "sample report" that corresponds to the particular Underlying Report hosted at https://app.spectora.com/v/reports/081f6483-82a6-4ff2-a3ea-79c13e2f1d56.  Defendant Spectora continued to publicly display these infringing reports until ReportHost sent a demand letter in May 2024.

68.     As a further example, on April 10, 2024, ReportHost submitted a DMCA takedown notice concerning sample reports hosted at https://app.spectora.com/home-inspectors/knoxville-engineered-home-inspections/sample_report?sample_id=24142 and https://app.spectora.com/home-inspectors/knoxville-engineered-home-inspections/sample_report?sample_id=26092.  These are "sample reports" that correspond to the particular Underlying Reports hosted at https://app.spectora.com/v/reports/03fce372-0c32-

4560-8e45-e8b82cde909d and https://app.spectora.com/v/reports/8c6047a7-5425-46b1-b488-d4b002fcd025.  Defendant Spectora continued to publicly display these infringing Underlying Reports until ReportHost sent Spectora a demand letter in May 2024.

69.    Defendant Spectora admitted that it did not timely comply with at least one of the DMCA takedown notices submitted by ReportHost.

70.    Defendant Spectora has never provided ReportHost with a counter-notice concerning any takedown notice submitted by ReportHost.

**Defendant Spectora's Public Statements**

71.    As part of the Settlement Agreement, ReportHost and Defendant Spectora agreed to use explicitly particularized language when referencing the parties' resolved dispute to the public.

72.    Defendant Spectora, through emails and on publicly accessible messaging boards on the internet, informed its customer base that it would be disabling access to certain reports on its platform pursuant to a settlement agreement executed with ReportHost.

73.    Defendant Spectora did not use the explicitly particularized language on which the parties agreed.

74.    Instead, Defendant Spectora informed customers that certain templates and reports "must be deleted pursuant to the litigation resolution."  Defendant Spectora identified ReportHost as the other litigant.

75.    As part of that same message, Defendant Spectora described to the consuming public that it disputed ReportHost's claims but had "chosen to settle the matter and protect our customers."  Defendant Spectora did not use the explicit language the parties had agreed to in the Settlement Agreement.

76.    Spectora and ReportHost are competitors for the business of the relevant consuming public, namely home inspectors.

77.     Spectora's statements cast ReportHost in a bad light to the parties' relevant consuming public.

78.     In a publicly accessible thread titled "Report Hoes, I mean Report Host nonsense," Defendant Spectora's principal Kevin Wagstaff invited customers to "jump on a call" with him because he didn't "want any InterNACHI or Spectora member to go through getting sued."

79.     Upon information and belief, Defendant Spectora engaged with third-parties and made additional statements concerning the Settlement Agreement, ReportHost, the Copyrighted Materials, and the dispute.

80.      Spectora also advised the relevant consuming public that a Google Drive Integration had been implemented and may be used as a means to copy infringing reports and templates prior to Spectora's deletion of those reports and templates.

81.     Defendant Spectora, through its agents, suggested use of the Google Drive Integration to its consumers as a means to bypass the deletion Spectora was required to do pursuant to the Settlement Agreement.

82.     On information and belief, many Spectora users used the Google Drive Integration referenced by Defendant Spectora to make additional infringing copies.

83.     Upon information and belief, Defendant Spectora flagged some content in some templates and reports hosted on the Spectora platform for deletion, and misled consumers that this content was claimed by ReportHost even though that content was not ReportHost content.

84.     Users of the Spectora platform posted to the same internet message boards as Kevin Wagstaff and in the same thread concerning these narratives and speaking derogatorily about ReportHost.

85.     ReportHost brought this breach to the attention of Spectora.

86.     Defendant Spectora denied a breach existed but agreed to meet with

ReportHost's principals.

87.    ReportHost offered a resolution to Defendant Spectora that involved a licensing relationship relative to use of ReportHost content on Spectora's platform.  Spectora informed ReportHost it would take the proposal to its Board of Directors.

88.    Defendant Spectora never responded to ReportHost's proposed resolution.

89.    Defendant Spectora did not make public statements correcting its mistake and continued to allow consumers to believe these "subpar" narratives were claimed by ReportHost.

**Spectora's Editing of Infringing Reports and Templates**

90.    Following the execution of the Settlement Agreement, Defendant Spectora, drawing on the Spectora Template Database, made copies of reports and/or templates that infringed the Copyrighted Works and edited them so as to highlight and remove particular elements of the reports and/or templates that were alleged to be content particular to the Copyrighted Works.

91.    Defendant Spectora then distributed these edited reports and/or templates to its customers.

92.    Additionally, when Defendant Spectora receives a takedown notice from ReportHost, Defendant Spectora edits the relevant template and/or report to remove only the content cited by ReportHost but leaves the remainder of the template and/or report intact and available.

93.    In other words, when receiving a takedown notice, rather than disable access to the infringing report and/or template, Defendant Spectora actively participates in the editing and/or creation of a new infringing report and/or template.

94.     On information and belief, Defendant Spectora has directly and indirectly profited from its unauthorized and illegal use of the Copyrighted Works.

95.    Defendant has knowledge that rights in the Copyrighted Works are owned by

ReportHost and that Defendant is acting without authorization.

96.   Defendant knew, or had reason to know, of direct infringement and induced or
materially contributed to the infringement.

97.   ReportHost's remedy at law is inadequate to compensate it fully for its injuries.
Unless enjoined, Defendant' actions will likely continue, causing irreparable damage to
ReportHost. It would be extremely difficult or impossible to estimate the amount of
compensation necessary to afford ReportHost complete monetary relief for continuing acts
damaging ReportHost's intangible assets and goodwill. Absent injunctive relief, ReportHost
will continue to be harmed by Defendant's infringing activities.

## COUNT I

### Copyright Infringement Against Defendant
### (17 U.S.C. § 501)

98.   ReportHost incorporates and realleges, as if fully set forth herein, the allegations
contained in the foregoing paragraphs of this Complaint.

99.   ReportHost is the owner of exclusive rights in the Copyrighted Works, and is
entitled to bring an action for copyright infringement pursuant to 17 U.S.C. Section 501 *et seq.*

100.   Defendant did not have ReportHost's authorization to use, distribute, publish,
author derivative works, modify, or copy the Copyrighted Works.

101.   Defendant Spectora maintains a database (the Spectora Template Database) that
contains significant content substantially similar to ReportHost's Copyrighted Works.

102.   Defendant Spectora is aware of facts or circumstances relative to the Spectora
Template Database containing content that is substantially similar to the Copyrighted Works.

103.   Defendant Spectora makes unlawful copies of the Copyrighted Works available
to Spectora's Clients.

104.   Defendant Spectora edits unlawful copies of the Copyrighted Works and makes

these edited copies available to Spectora's Clients.

105. Defendant Spectora has designed and uses software that reproduces the Underlying Reports to create "sample reports."

106. ReportHost has informed Defendant Spectora that many of the "sample reports" violate the Copyrighted Works, and, through agreement, that the Underlying Reports also violate the Copyrighted Works.

107. Defendant Spectora has actual knowledge that the Underlying Reports are infringing.

108. Defendant Spectora is at least aware of facts or circumstances from which the Underlying Reports' infringing activity is apparent.

109. Defendant Spectora has failed to disable access to reports ReportHost has notified Defendant Spectora infringe the Copyrighted Works.

110. Defendant's unauthorized actions infringed ReportHost's exclusive rights granted by the Copyright Act, 17 U.S.C. § 106.

111. Defendant's acts of infringement are willful, in disregard of and with indifference to ReportHost's rights.

112. On information and belief, Defendant profited from its unlawful actions.

113. As a direct and proximate result of the infringements by Defendant, ReportHost is entitled to actual damages and Defendant's ill-gotten profits for infringement occurring after August 29, 2023, in amounts to be proven at trial.

114. Alternatively, at its election, ReportHost is entitled to statutory damages, up to the maximum amount of $150,000 per infringing work for Defendant's willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

115. As a direct and proximate result of Defendant's acts and conduct, ReportHost has sustained and will sustain substantial, immediate and irreparable injury, for which there is

no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will likely continue to infringe Plaintiff's rights in the Copyrighted Works. Plaintiff is entitled to injunctive relief under 17 U.S.C. § 502.

## COUNT II

### Vicarious Copyright Infringement Against Spectora

116.    ReportHost incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

117.    ReportHost is the owner of exclusive rights in the Copyrighted Works, and is entitled to bring an action for copyright infringement pursuant to 17 U.S.C. § 101 *et seq.*

118.    On information and belief, Defendant Spectora has a direct financial interest in the infringing activity of Spectora's Clients by profiting from the home inspection reports created and sold by Spectora's Clients while using the Spectora platform.

119.    On information and belief, Defendant Spectora's software has the ability to edit home inspection reports uploaded to its system.

120.    On information and belief, Defendant Spectora has access to the Copyrighted Works in full.

121.    On information and belief, Defendant Spectora has the right and ability to therefore supervise the infringing activity of Spectora's Clients, at least as relevant to Spectora's Clients' creation of home inspection reports.

122.    Defendant did not have ReportHost's authorization to use, distribute, publish, author derivative works, or copy the Copyrighted Works, nor to permit or authorize Spectora's Clients to use, distribute, publish, author derivative works, or copy the Copyrighted Works.

123.    Defendant Spectora failed to stop Spectora's Clients from using, distributing, publishing, making derivative works, or copying the Copyrighted Works.

124.    On information and belief, Defendant profited from the direct infringement by

Spectora's Clients because Spectora's Clients are attracted to Spectora's platform because it enables them to use the Copyrighted Works without using ReportHost's platform.

125.    Defendant Spectora's offering and editing of material using the Copyrighted Works outside of ReportHost's platform acts as a draw to Spectora's Clients.

126.    As a direct and proximate result of the vicarious infringement by Defendant, ReportHost is entitled to actual damages and Defendant's ill-gotten profits for infringement occurring after August 29, 2023, in amounts to be proven at trial.

127.    Alternatively, at its election, ReportHost is entitled to statutory damages, up to the maximum amount of $150,000 per infringing work for Defendant's vicarious infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

128.    As a direct and proximate result of Spectora's acts and conduct, ReportHost has sustained and will sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will likely continue to infringe Plaintiff's rights in the Copyrighted Works. Plaintiff is entitled to injunctive relief under 17 U.S.C. § 502.

## COUNT III
### Contributory Copyright Infringement Against Spectora

129.    ReportHost incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

130.    ReportHost is the owner of exclusive rights in the Copyrighted Works, and is entitled to bring an action for copyright infringement pursuant to 17 U.S.C. § 101 *et seq.*

131.    On information and belief, Defendant Spectora enabled access to a "Google Integration" tool that would allow Spectora's Clients to unlawfully reproduce infringing works.

132.    Spectora's Clients reproduced infringing works that were created, published, and stored in Defendant Spectora's platform.

133.   On information and belief, Defendant Spectora knew or had reason to know of the direct infringement of Spectora's Clients.

134.   On information and belief, Defendant Spectora encouraged or assisted Spectora's Clients in using the "Google Integration" tool to unlawfully make copies of infringing works.

135.   On information and belief, Defendant Spectora provided tools to Spectora's Clients to enable their infringement, thereby materially contributing to the infringement.

136.   On information and belief, Defendant Spectora encouraged Spectora's Clients to use the "Google Integration" tool, thereby inducing the infringement.

137.   Defendant Spectora has been provided with the full and complete deposit copies of the Copyrighted Works.

138.   Defendant Spectora has available to it simple measures to prevent Spectora's Clients' infringing conduct, yet affirmatively continued and continues to provide access to tools allowing for copying of infringing works.

139.   On information and belief, Defendant Spectora has a direct financial interest in the infringing activity of Spectora's Clients, by profiting from collecting fees from its customers in exchange for, *inter alia*, providing narrative elements used to populate the home inspection reports created and sold by Spectora's Clients.

140.   Defendant did not have ReportHost's authorization to use, distribute, publish, author derivative works, or copy the Copyrighted Works, nor to permit or authorize Spectora's Clients to use, distribute, publish, author derivative works, or copy the Copyrighted Works.

141.   Defendant Spectora encouraged and assisted Spectora's Clients in using, distributing, publishing, making derivative works, and copying the Copyrighted Works.

142.   As a direct and proximate result of the contributory infringement by Defendant Spectora, ReportHost is entitled to actual damages and Defendant Spectora's ill-gotten profits

for infringement occurring after August 29, 2023, in amounts to be proven at trial.

143.    Alternatively, at its election, ReportHost is entitled to statutory damages, up to the maximum amount of $150,000 per infringing work for Defendant's vicarious infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

144.    As a direct and proximate result of Defendant Spectora's acts and conduct, ReportHost has sustained and will sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant Spectora will likely continue to infringe Plaintiff's rights in the Copyrighted Works. Plaintiff is entitled to injunctive relief under 17 U.S.C. § 502.

## COUNT IV

### False or Misleading Statements
### (15 U.S.C. § 1125(a))

145.    ReportHost incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

146.    On information and belief, Spectora informed its consumers that certain subpar narratives in their reports and templates were claimed by ReportHost.

147.    These particular narratives were not part of the Copyrighted Works.

148.    Consumers disparaged ReportHost based on the identification of these particular narratives.

149.    Defendant Spectora engaged in the internet message board where these disparaging comments were taking place, including in the same thread as these disparaging comments.

150.    Defendant Spectora did not correct these comments and instead, in that same thread, made additional commentary concerning the settlement with ReportHost and ReportHost suing other parties.

151.    Defendant Spectora's misleading and false statements were made concerning ReportHost's services and commercial activities.

152.    Defendant Spectora is a competitor of ReportHost.

153.    Defendant Spectora's misleading and false statements were made for the purpose of keeping Spectora customers on the Spectora platform and not using the ReportHost platform.

154.    The internet messaging board Spectora and its customers use is a publicly accessible messaging board that is popularly used by consumers in the industry.

155.    Defendant Spectora's misleading and false statements misrepresent the nature, characteristics, and quality of ReportHost's narratives, platform, and commercial activities.

156.    As a direct and proximate result of Defendant Spectora's acts and conduct, ReportHost has sustained and will sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant Spectora will likely continue to infringe Plaintiff's rights. Plaintiff requests injunctive relief pursuant to 15 U.S.C. § 1116(a).

157.    ReportHost is entitled to actual damages and Defendant Spectora's ill-gotten profits relative to these misrepresentations in amounts to be proven at trial.

## COUNT V

### Colorado Consumer Protection Act
### (C.R.S. 6-1-105)

158.    ReportHost incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of this Complaint.

159.    In October 2023, Defendant Spectora, despite covenanting to particular language, contacted third-parties in the home inspection industry and informed them that litigation between ReportHost and Defendant Spectora had resolved.

160.    As part of these communications, Defendant Spectora made statements and engaged in particular actions, namely the citation of particular content in reports, that a reasonable consumer would think would amount to a baseless claim made by ReportHost.

161.    Defendant Spectora was aware of a large consumer backlash, particularly among Colorado residents, that targeted ReportHost as a direct result of Spectora's statements and actions.

162.    For example, one Colorado resident posted photos of ReportHost's home office and called ReportHost "Report Hoes."

163.    As another example, ReportHost received an email that stated, in part: "I hope and pray you will not be around in the coming years. Please leave the industry. You only harm it.  We have already started a petition and have over 1200 signatures for a class action lawsuit. This is going to be fun."

164.    As a further example, ReportHost received an onslaught of "one-star" reviews on Google.com.

165.    Defendant Spectora's actions significantly impact the public as actual or potential consumers of ReportHost's services may be diverted from subscribing to ReportHost's services.

166.    Since Defendant Spectora first engaged in these actions, ReportHost's business has suffered and continues to suffer.

167.    As a direct and proximate result of the Defendant Spectora's actions, ReportHost has suffered injury in the form of lost customers, lost profit, and lost goodwill, and is entitled to actual damages.

## <u>COUNT VI</u>

### Breach of Contract

168.    ReportHost incorporates and realleges, as if fully set forth herein, the allegations

contained in the foregoing paragraphs of this Complaint.

169.    On August 29, 2023, ReportHost and Defendant Spectora entered into the
Settlement Agreement to resolve the parties' dispute and to provide for the elimination of
ReportHost content on the Spectora platform.

170.    Spectora made statements to third-parties concerning the parties' dispute in
direct violation of the Settlement Agreement's provision concerning explicit language.

171.    Spectora encouraged and provided a means for third-parties to make copies of
ReportHost content on the Spectora platform so that these copies would exist outside of the
Spectora platform.

172.    Spectora allowed consumers to believe ReportHost's claims were unreasonable
by failing to correct consumers who believed content flagged by Spectora as ReportHost
content was ReportHost content despite the fact that some content flagged by Spectora as
ReportHost content was not ReportHost content.

173.    Spectora encouraged consumers to believe that ReportHost's claims were
unreasonable through its statements and actions concerning the claims' merits, all contrary to
the intent and language of the Settlement Agreement.

174.    Spectora breached the explicit terms of the Settlement Agreement's
confidentiality provision.

175.    On information and belief, Spectora failed to permanently delete templates as
required by the Settlement Agreement.

176.    On November 27, 2023, Defendant Spectora certified that it had completed its
obligations under the Settlement Agreement.

177.    ReportHost has properly notified Spectora of these breaches and Spectora has
denied these breaches occurred.

178.    Spectora breached the implied covenant of good faith and fair dealing.

179.    As a direct and proximate result of Spectora's breach, ReportHost suffered and continues to suffer injury in the form of lost customers, lost profit, and reputational harm, and is entitled to be made whole.

## PRAYER FOR RELIEF

Plaintiff ReportHost LLC prays for judgment against Defendant and all their affiliates, agents, servants, employees, partners and all persons in active concert or participation with them, for the following relief:

1.    Award Plaintiff actual damages and Defendant's profits; alternatively, at Plaintiff's election, award the maximum statutory damages for each work infringed; or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

2.    Issue an order permanently enjoining Defendant, and all persons acting in concert or participation with it, from infringing any of Plaintiff's exclusive rights under 17 U.S.C. § 106 and 15 U.S.C. 1125(a).

3.    Issue an order permanently enjoining Defendant, and all persons acting in concert or participation with them, to refrain from discussing ReportHost's goods, services, and commercial activities.

4.    Award Plaintiff its costs and attorney fees.

5.    For other and further relief, in law or in equity, to which Plaintiff may be entitled or which the Court deems just and proper.

Respectfully submitted this 28th day of June, 2024.

/s/ Ethan B. Vodde
Vodde IP
5428 Regal St. #30956
Spokane, WA 99223
ethan@voddeip.com

/s/ Kevin S. McPherson
McPherson Law, PLLC
155 E. Boardwalk Dr., Ste. 400-508#
Fort Collins, CO 80525
km@mcpherson.law
Attorneys for Plaintiff ReportHost LLC