## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01813-PAB-SBP

REPORTHOST LLC,

     Plaintiff,

v.

SPECTORA, INC.,

     Defendant.

---

## DEFENDANT SPECTORA, INC.'S
## SPECIAL MOTION TO DISMISS COUNT V PURSUANT TO C.R.S. § 13-20-1101

---

Pursuant to Colorado's Anti-SLAPP law, C.R.S. § 13-20-1101, Defendant Spectora, Inc. ("Spectora") specially moves the Court to dismiss Count V of ReportHost LLC's ("ReportHost") Complaint (Doc. 1) (Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105) and for an award of Spectora's attorneys' fees.

## I.    <u>INTRODUCTION</u>

In Count V, ReportHost, seeks to hold Spectora liable under the Colorado Consumer Protection Act ("CCPA") for allegedly making statements, in email and on an industry group internet message board, about a prior lawsuit between them. ReportHost claims that in those communications, Spectora referenced the positions the parties took in the prior lawsuit, and insinuated that ReportHost's copyright infringement claims were based on "subpar narratives" in the home inspection reports and templates at issue. (*See* Doc. 1 ¶¶ 2-3, 7-9, 16-22, 30-56, 71-84, 88, 146-155, 158-167.) ReportHost's claim—an obviously defective defamation claim merely repackaged under the CCPA—is exactly what the Colorado legislature had in mind when it enacted Colorado's "anti-SLAPP" law, which is designed "to encourage and safeguard the constitutional rights of persons to … speak freely … to the maximum extent permitted by law."

C.R.S. § 13-20-1101(1)(b); *Salazar v. Pub. Trust Inst.,* 522 P.3d 242, 246 (Colo. App. 2022).

Colorado's anti-SLAPP law provides for enforcement of that policy by way of a "special motion to dismiss," which may be filed against any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue." C.R.S. § 13-20-1101(3)(a). Such a motion may attack a claim either on the face of the plaintiff's pleading or on the sufficiency of its evidence. Once the movant establishes that the anti-SLAPP law applies, it is the plaintiff's burden to prove any exceptions and a reasonable probability of success on each element of the claim. If plaintiff fails, the movant is entitled to judgment on the claim and its costs and reasonable attorney fees.

The anti-SLAPP law applies to and requires dismissal of Count V. That claim arises from Spectora's alleged public statements concerning the merits of ReportHost's allegations and legal theories in a lawsuit that was before this court. The claim fails on a facial challenge because the Complaint's allegations do not meet the governing pleading standards. The claim also fails a factual challenge because it is not supported by the evidence. Accordingly, Spectora respectfully moves the Court to dismiss Count V of the Complaint, and to award Spectora its fees and costs in connection with the motion.

## II.    D.C.COLO.LCIVR. 7.1(A) CONFERRAL STATEMENT

Counsel for the parties conferred by videoconference and email about the bases for this motion on several occasions between August 2, 2024 and August 19, 2024, including exchanging legal authorities and providing oral or written explanation of their positions. ReportHost declined to amend the Complaint's allegations or to withdraw the CCPA claim, necessitating this Motion.

## III.    THE STANDARDS APPLICABLE TO THIS ANTI-SLAPP MOTION

As an initial matter, Colorado's "anti-SLAPP law is applicable in federal court." *Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1128 (D. Colo. 2022); *see*

*also id.* 1128-33 (analysis confirming holding).[1] "Disposition of a special motion to dismiss

under Section 13-20-1101 requires a two-step analysis:"

    1.    The Court first considers whether the defendant can establish that the plaintiff's
claim(s) arise from free speech rights under the statute.

    2.    If so, the Court determines whether plaintiff has established a reasonable
likelihood of success on the claim.

*Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1197-98 (D. Colo. 2023).

        In federal court, where an "anti-SLAPP motion mounts [only] a legal challenge, courts

assess the motion under Federal Rule of Civil Procedure 12(b)(6)… If the anti-SLAPP motion

mounts a factual challenge, courts assess the motion under Federal Rule of Civil Procedure 56."

*Moreau*, 641 F. Supp. 3d at 1133. This Motion raises both legal and factual challenges to Count

V. Therefore, Plaintiff must show both that its CCPA claim survives under the 12(b)(6) standard

*and* that it has sufficient evidence, that it can present in admissible form, to support each element

of its claim and to overcome any defenses, such that it can show a reasonable probability of

success at trial. *Cf.* Fed. R. Civ. P. 56(a), (c)(1).

## IV.    <u>ARGUMENT: COUNT V OF THE COMPLAINT SHOULD BE DISMISSED</u>

        Spectora satisfies its burden under Step One: the CCPA claim is subject to the anti-

SLAPP law because it is premised on statements Spectora allegedly made, on a public forum,

about ReportHost's claims in a prior lawsuit between the parties. Proceeding to Step Two,

---

[1] Aside from some procedural aspects not at issue here. *See Moreau*, 641 F. Supp. 3d at 1130-31. This Court has stated it is "unclear" if Colorado's anti-SLAPP law applies in federal court, but still applied that law. *Double Diamond Distrib. Ltd. v. Crocs, Inc.*, No. 23-CV-01790-PAB-KAS, 2024 WL 1051951, at *12 (D. Colo. Mar. 11, 2024). So has every judge in the District who has faced the issue. *E.g.*, *Coomer*, 659 F. Supp. 3d at 1198-99 (Martinez, J, also noting Judges Blackburn and Sweeney's similar views); *Am. Muckrakers PAC, Inc. v. Boebert*, No. 23-CV-01463-RMR-KAS, 2024 WL 3738932, at *6 (D. Colo. June 9, 2024) (Starnella, M.J.); *Stevens v. Mulay*, No. 19-CV-01675-REB-KLM, 2021 WL 1300503, at *4 (D. Colo. Feb. 16, 2021) (Mix, M.J.), report and recommendation adopted, 2021 WL 1153059 (D. Colo. Mar. 26, 2021) (Blackburn, J.); *Addison Ins. Co. v. Veverka*, No. 19-CV-03008-RBJ, 2020 WL 12043542, at *1 (D. Colo. June 19, 2020) (Jackson, J.).

ReportHost cannot meet its burden to prove it has a reasonable likelihood of success on it CCPA claim. The Complaint's well-pleaded factual allegations are insufficient, and the evidence ReportHost might muster is, too. Accordingly, the CCPA claim should be dismissed with prejudice, and Spectora should be awarded its fees and costs.

A.    **Spectora Meets Anti-SLAPP Step One: Count V Is Within the Statute**

Like the California statute on which it was modeled, Colorado's anti-SLAPP statute applies broadly to *any* "cause of action" arising from "[a]ny written or oral statement or writing made" either "in connection with an issue under consideration or review by a … judicial body," "in a place open to the public or a public forum in connection with an issue of public interest," or otherwise "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." C.R.S. § 13-20-1101(2)(a), (3)(a); *accord Navellier v. Sletten*, 124 Cal.4th 82, 92 (2002) ("Nothing in the statute itself categorically excludes any particular type of action from its operation…").

Here, as alleged by the Complaint, Count V is premised on an allegation that Spectora "contacted third-parties in the home inspection industry and informed them that ***litigation between ReportHost and Defendant Spectora had resolved***," and that, in "these communications, Defendant Spectora made statements and engaged in particular actions, namely the citation of particular content in reports, that a reasonable consumer would think would amount to ***a baseless claim made by ReportHost***." (Doc. 1, ¶¶ 159-160 (emphases added).) According to the Complaint, these statements "significantly impact[ed] the public." (Doc. 1, ¶ 165.) Although Count V does not clearly identify where or how these alleged statements were made, or what exactly these statements were, the claim incorporates by reference the Complaint's preceeding 157 paragraphs of allegations. (Doc. 1, ¶ 158.) And those paragraphs suggest that Spectora's alleged statements, whatever they were, were made either directly to

certain individuals or on "a publicly accessible [internet] messaging board that is popularly used by consumers in the industry." (Doc. 1 ¶¶ 146, 149, 154; *see also id.* ¶¶ 72, 74-79, 83-84, 90-91.)

Based on the Complaint's allegations, anti-SLAPP step one is satisfied. The "cause of action" in Count V arises specifically from "written or oral statement[s]" Spectora allegedly made about and in connection with a lawsuit litigated between the parties in this Court, the claims and defenses alleged therein (e.g., copyright infringement and the non-copyrightability of ReportHost's allegedly wrongfully copied, generic content), the merits and resolution of those claims and defenses, and the impact of the litigation and its resolution on home inspectors. And, as the Complaint alleges, the litigation and its settlement were of significant public interest, and ultimately resulted in "a large consumer backlash," including claims of "over 1200 signatures for a class action lawsuit" by those affected by it. (Doc. 1 ¶¶ 162-163, 165.) Thus, the alleged conduct falls within the scope of at least C.R.S. § 13-20-1101(2)(a)(II) and (IV) because the alleged statements were "made in connection with [] issue[s] under consideration by a … judicial body," or were "in furtherance of the exercise of the constitutional right of petition or … free speech in connection with a public issue or an issue of public interest." *Id.*; *see Coomer* 659 F. Supp. 3d at 1200 (D. Colo. 2023); *Double Diamond Distrib. Ltd. v. Crocs, Inc.*, No. 23-CV-01790-PAB-KAS, 2024 WL 1051951, at *4 n.3 (D. Colo. Mar. 11, 2024) (finding a "press release involves a matter of public concern because it discusses the conclusion of a … federal court case involving alleged [intellectual property] infringement") (citing cases); *accord Navellier*, 29 Cal.4th at 90, (defendant's "negotiation and execution of the [settlement], therefore, involved statement[s] or writing[s] made in connection with an issue under consideration or review by a ... judicial body … [and this] establishes … that this action is based on acts … in connection with a public issue." (internal quotations and citations omitted)); *Contemp. Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1054-55 (2007) (email with litigation update to those with some interest in the litigation is protected; such "a communication

is absolutely immune from any tort liability if it has 'some relation' to judicial proceedings" (citations omitted)). Additionally, the alleged statements are also within the scope of C.R.S. § 13-20-1101(2)(a)(III) because they allegedly were made in a public forum or in a place open to the public—i.e., an internet message board. (Doc. 1 at 11 ("Defendant Spectora's Public Statements"); *id.* ¶¶ 72, 74-75, 78, 84, 154). *Rosenblum v. Budd*, 2023 COA 72, ¶ 30 ("Because the medium for the 'statement' was a public Twitter account, we are satisfied that it was made in a 'public forum.'"); *see also Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n. 4 (2006) ("Web sites accessible to the public, like the 'newsgroups' where Rosenthal posted Bolen's statement, are 'public forums' for purposes of the anti-SLAPP statute.").

**B.** **ReportHost Fails Anti-SLAPP Step Two: Count V Is Insufficient On its Face and Is Unsupported by Evidence**

Step One is met, so the burden shifts to ReportHost to both plead and prove it has a reasonable likelihood of succeeding on its claim. It did not, and cannot, do this. ReportHost's claim under the CCPA requires pleading and proof that:

> (1) [Spectora] engaged in an unfair or deceptive trade practice;
>
> (2) the challenged practice occurred in the course of [Spectora's] business, vocation, or occupation;
>
> (3) the challenged practice significantly impacts the public as actual or potential consumers of [Spectora's] goods, services, or property;
>
> (4) [ReportHost] suffered injury in fact to a legally protected interest; and
>
> (5) the challenged practice caused [ReportHost's] injury.

*Alpine Bank v. Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009), citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). To survive a facial attack (under the Rule 12 standard), CCPA claims "must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b)." *Hauschild GMBH & CO. KG v. FlackTek, Inc.*, No. 20-cv-02532-PAB-STV, 2022 WL 392501, at *10 (D.

Colo. Feb. 9, 2022). This means ReportHost was required to specifically allege "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F.Supp.2d 1115, 1121 (D. Colo. 2011), quoting *Koch v. Koch Industs., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). ReportHost did not meet this pleading burden at least for the first and third elements of its claim. Additionally, to survive an evidentiary challenge, ReportHost must come forward with evidence, under the Rule 56 standard, sufficient to prove all of the elements of its claim. It cannot do so for at least the first, second, fourth, or fifth elements of its claim.

1.    Missing Element (Legal and Factual): No Deceptive Trade Practice

For the first element, ReportHost must plead with specificity, and then prove, that Spectora knowingly or with reckless disregard for the truth made "a false or misleading statement" that has a "tendency or capacity to attract customers through deceptive trade practices." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147-48 (Colo. 2003) (cleaned up); *see also Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); C.R.S. § 6-1-105(1)(e), (h); C.R.S. § 6-1-105(4) ("'recklessly' means a reckless disregard for the truth or falsity of a statement or advertisement").

The Complaint fails a legal challenge because it never specifically identifies any allegedly false statement, as required under Rule 9. It fails a factual challenge because the evidence shows no false statements were made, and certainly not knowingly or with reckless disregard. What the Complaint alleges, in general, are the following statements, none of which survives scrutiny:

| Alleged Statement | Failure |
|---|---|
| "Defendant Spectora, through emails and on publicly accessible messaging boards on the internet, informed its customer base that it would be disabling access to certain reports on its platform pursuant to a settlement | The Complaint does not allege: (1) to whom or to what effect this was said; (2) that the statement was false or that Spectora knew it statement to be false; (3) that the statement induced anyone to act or not act as a Spectora |

| | |
|---|---|
| agreement executed with ReportHost." (Doc. 1 ¶ 72.)<br><br>"certain templates and reports 'must be deleted pursuant to the litigation resolution.'" (Doc. 1 ¶ 74.) | consumer. Even if all of these missing elements had been supplied, the claim still would fail because this is a true statement, as ReportHost even admits elsewhere in the Complaint. (Doc. 1 ¶ 58; *see id.* ¶ 44, 175; Ex. 1 § 4.a.-c.) |
| "As part of that same message, Defendant Spectora described to the consuming public that it disputed ReportHost's claims but had 'chosen to settle the matter and protect our customers.'" (Doc. 1 ¶ 75.)<br><br>"In October 2023, Defendant Spectora … contacted third-parties in the home inspection industry and informed them that litigation between ReportHost and Defendant Spectora had resolved." (Doc. 1 ¶ 159.) | The Complaint does not allege: (1) to whom, where, or to what effect the statements were made; (2) that the statements were false or that Spectora knew them to be false; (3) that the statements induced anyone to act or not act as a Spectora consumer. Even if all of these missing elements had been supplied, the claim still would fail because this is a true statement, as ReportHost even admits elsewhere in the Complaint. (Doc. 1 ¶ 3 ("ReportHost filed an action on February 23, 2022 in the District of Colorado against Defendant Spectora Inc.… The parties reached a settlement and that action was terminated on September 7, 2023."); *id.* ¶¶ 49-56; Ex. 1 at Preamble ¶¶ D-F (reflecting Spectora disputes the claims but chose to settle), § 7.a (protecting Spectora's customers by extending release form "all claims" to "Spectora's customers"); Ex. 7, *ReportHost LLC v. Spectora, Inc.*, Doc. 42 (No. 1:22-cv-457-DDD-SKC (D. Colo.)).) |
| "In a publicly accessible thread titled 'Report Hoes, I mean Report Host nonsense,' Defendant Spectora's principal Kevin Wagstaff invited customers to 'jump on a call' with him because he didn't 'want any InterNACHI or Spectora member to go through getting sued.'" (Doc. 1 ¶ 78.) | The Complaint does not allege this statement to be false, and neither the thread title nor anything about Mr. Wagstaff's own alleged statement of opinion is capable of being false.[2] Nor did Mr. Wagstaff/Spectora give the thread its title (nor are they alleged to have), which also is non-actionable opinion. |
| "Defendant Spectora engaged with third-parties and made additional statements concerning the Settlement Agreement, ReportHost, the Copyrighted Materials, and the dispute." (Doc. 1 ¶ 79.) | For these wholly unidentified statements, the Complaint does not allege: (1) who said what, when, to whom, where, or to what effect; (2) that the statement was false or misleading, or that Spectora knew the statement to be so; (3) that the statement induced anyone to act or not act as a Spectora consumer. |
| Other statements made by third parties, some of which are unidentified. (*See* Doc. 1 ¶¶ 84, 161–162.) | None of these statements is alleged to be Spectora's. If Spectora could be held liable under the CCPA, the Communication |

---

[2] Mr. Wagstaff's complete statement was as follows: "Hey Ian, I know this is a pain. Let's jump on a call when you have a minute. I don't want any InterNACHI or Spectora member to go through getting sued. We're doing our best to minimize impact." (Ex. 2 at 5.)

| | Decency Act would preempt the claim and grant Spectora immunity. |
|---|---|

Not only were none of Spectora's alleged statements false or misleading (or, in some cases, even capable of being so), but there is nothing in the Complaint to indicate that these statements had a tendency to attract customers to Spectora or to induce anyone to transact business with Spectora or withhold it from ReportHost. *See Rhino*, 62 P. 3d at 147.

Furthermore, particularly given that no statement is even clearly identified, and that the ones vaguely identified are not false, the Complaint also fails to allege—and there is no evidence to prove—that Spectora had actual knowledge of[3] or acted "in reckless disregard for the truth or falsity of any of its statement[s] or advertisement[s]." To the contrary, Spectora has never made any false statements about ReportHost.

Furthermore, to the extent ReportHost seeks to hold Spectora liable for posting in internet message boards where other people allegedly said false things and Spectora did not "correct" them (*e.g.*, Doc. 1 ¶ 150, 172), the claim fails under the CCPA's first element because Spectora is not the acting party. Moreover, even if the CCPA could be twisted to create liability, Spectora would nevertheless be immune from liability for those other message board users' statements under the Communications Decency Act ("CDA"). 47 U.S.C. § 230(c)(1) ("[n]o … user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"); *id.* § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."); *see, e.g.*, *Directory Assistants v. SuperMedia, LLC*, 884 F. Supp. 2d 446, 452-453 (E.D. Va. 2012) ("there is no authority in the statute or case law that makes a user responsible for

---

[3] *Przekurat ex rel. Przekurat v. Torres*, 2018 CO 69 at ¶ 15 (2018) ("Statutory interpretation in Colorado has consistently construed the words 'know' or 'knowingly' without that qualifying 'should have known' to require actual knowledge."), citing *People ex rel. Suthers v. Mandatory Poster*, 260 P.3d 9, 14 (Colo. App. 2009) ("'knowingly,' as used in the CCPA, requires actual knowledge").

the creation or development of posts on a website").[4] Accordingly, to the extent the Complaint
seeks to impose liability for any message board posts or other statements that *others* made on the
internet, Spectora cannot be held liable for those statements or for "failing to correct" them.

    2.    <u>Missing Element (Legal and Factual): No Significant Public Impact to
Consumers</u>

The CCPA claim also fails because what it seeks to redress is a purely private wrong—an
alleged breach of contract regarding what the parties could say about their prior dispute, for
which ReportHost has brought a separate claim. (*See* Doc. 1 ¶¶ 159, 170, 174.) And "[a] breach
of contract claim, without additional conduct, cannot constitute an actionable claim under the
CCPA," nor does the CCPA otherwise provide redress for "a wrong [that] is private in nature."
*Rhino Linings*, 62 P.3d at 148-50.

As an initial matter, the allegedly false statement's significant public impact must be, and
must harm, consumers *as* consumers. Here, though, Spectora's email statements were made only
to existing customers about the content they had stored on Spectora's systems that Spectora
would be deleting due to litigation—not about consumer goods or services Spectora or
ReportHost were offering. (*See* Ex. 3 [sample email]). Similarly, nothing in Spectora's few
message board posts was directed at consumers as consumers. These non-commercial, non-
advertising statements cannot impact consumers as consumers.

"[T]o determine whether a challenged practice has significant impact on the public,"
Courts consider "(1) the number of consumers directly affected by the challenged practice; (2)
the relative sophistication and bargaining power of the consumers; and (3) evidence that the
challenged practice has previously impacted other consumers or has significant potential to do so
in the future." *Dean Witter Reynolds v. Variable Life Ins.*, 373 F. 3d 1100, 1113 (10th Cir. 2004)

---

[4] Although the CDA exempts intellectual property laws from the scope of immunity, false
advertising claims do not implicate intellectual property rights. *Enigma Software Grp. USA, LLC
v. Malwarebytes*, 946 F. 3d 1040, 1045 (9th Cir. 2019).

(citing *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998)). The Complaint lacks allegations to factually support any of the three factors, as to any the alleged "misrepresentations." It does, however, contain allegations that doom the claim.

                          a.          <u>Missing (Legal and Factual): Consumer Sophistication and Bargaining Power; Previous or Future Impact of Spectora's Statements on Consumers</u>

As to the latter two elements of "significant public impact," there are no factual allegations in the Complaint—let alone any admissible evidence, which ReportHost must come forward with on this Motion—about the relative sophistication or bargaining power of these consumers, or that the challenged practice has previously impacted other consumers or has significant potential to do so in the future.

                          b.          <u>Missing (Legal and Factual): Significant Number of Affected Consumers</u>

The Complaint lacks factual allegations that significant number of consumers were affected by any of Spectora's statements, nor is there admissible evidence of the same. To the contrary, many of the "misrepresentations" apparently are alleged to have been made in private, one-on-one communications. (*See, e.g.*, Doc. 1 ¶¶ 72, 74 (statements about the settlement "through emails" to customers); *id.* ¶ 78 (Spectora "invited customers[5] to 'jump on a call'"); *id.* ¶ 83 ("Defendant Spectora flagged some content in some templates and reports hosted on the Spectora platform for deletion"); *id.* ¶ 159-160 ("In October 2023, Defendant Spectora, despite covenanting to particular language, contacted third-parties in the home inspection industry and informed them that litigation between ReportHost and Defendant Spectora had resolved. As part of these communications, Defendant Spectora made statements and engaged in particular actions, namely the citation of particular content in reports, that a reasonable consumer would think would amount to a baseless claim made by ReportHost.")). But private conversations do not a significant public impact make.

_____

[5] Actually, only one customer. *See* quoted text at fn. 2, *supra*.

Nor is there any allegation in the Complaint about how many home inspection software consumers (or, more to the point, consumers in Colorado) saw, read, or understood the internet forum thread Spectora allegedly posted in. Nor is there any allegation about how those numbers compare to the total number of home inspection software consumers there are (in Colorado[6]) so as to be significant, or that a significant number of these consumers were discernably impacted by the statement. *See Examination Bd. of Prof'l Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 919-20 (D. Colo. 2021) ("The mere fact that … websites can be, and presumably are, viewed by numerous people is not enough. There has to be some indication that there was a significant impact on the public. . . It is insufficient to argue that the public was impacted merely because they read or saw the comments. These comments must have some discernible, significant impact on the public to be actionable under the CCPA. . . To succeed on a CCPA claim, the law requires [plaintiff] to show more than that a small percentage of the public may have been impacted."); *Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2713954, at *8 (D. Colo. Mar. 30, 2023) ("Courts in this district have held that, at the summary judgment stage, a plaintiff cannot rely solely on the existence of misleading statements online to establish the public impact element."); *Adams v. FedEx Ground Package Sys., Inc.*, 546 F. App'x 772, 776 (10th Cir. 2013) (affirming CCPA claim dismissal for lack of significant public impact where although 3,000 signed the same allegedly deceptive agreement, no allegation made of how many of those were harmed).

         3.    <u>Missing Elements (Factual): Damages and Causation</u>

Although ReportHost conclusorily alleges that it has suffered actual damages, it has no admissible evidence to prove it has been damaged, let alone that any damages were caused by Spectora's acts. Tellingly, the Complaint weakly says only that "actual or potential consumers of

---

[6] *See, e.g.*, *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD-KMT, 2013 WL 5448078, at *6 (D. Colo. Sept. 27, 2013) (holding the CCPA does not apply extraterritorially).

ReportHost's services *may* be diverted from subscribing to ReportHost's services," and not that any consumers *have been* diverted. (Doc. 1 ¶ 165.) This is not enough. Nor is it enough that, in some unspecified way "ReportHost's business has suffered." (*Id.* ¶ 166.)

At best, ReportHost's Complaint suggests that it suffered reputational harm because Spectora posted (true) comments on the InterNACHI user forum where *other people*, and not Spectora, made disparaging statements about Report Host. But Spectora's post-settlement statements could not have caused ReportHost's reputation, because ReportHost *already* had a reputation in the same InterNACHI community (and the same *members* of that community) for being "a very sleazy company" that long-since had only outdated products to offer, that does not innovate, that cannot compete, that exists only to press frivolous legal claims, and that should be targeted for class action litigation for making extortionist copyright infringement claims. *Compare* Doc. 1 ¶¶ 161–163, *with*:

- "ReportHost wants to sue me . . . I stopped using their software. . . I have heard that others have gone through this type of stuff with them before." (Ex. 4 at 1.)

- "I will . . . launch a social media ad campaign telling everyone in my inspection community why I left report host. It will not be a positive review. I have access to over 20,000 members. Please let me know where to send the check and I will copy you in all of my social media correspondence so you can track your glowing reputation." (*Id.* at 4.)

- "They want you to pay a $1080 ransom to access your old reports." (*Id.*)

- "I have heard this tactic used before by a disgruntled inspection report host." (*Id.* at 5.)

- "just in case anyone missed it this has been a hot topic for the last year or two" (*Id.* at 6.)

- "you stopped using their service and now they falsely accuse you of continuing to use their product somehow or using their crappy narratives. And now their holding your old reports ransom... I guess they want to make sure you never return as a customer." (*Id.* at 8.)

- "I have two reports from members saying that Report Host is threatening to sue

them. They stopped using Report Host, but Report Host wants paid forever, apparently. If I get a few more of these, I'm going to bury them alive in legal bills." (Ex. 5 at 1.)

• "ReportHost is a very sleazy company. They hired a fake inspector to contact Spectacular to see if we would convert her narratives from ReportHost to Spectacular so they could trap and possibly sue us." (*Id.* at 5.)

•  "You built your narratives in HIP. Are your narratives now property of HIP? It seems silly, but that's what ReportHost wants to enforce. You build your narratives from scratch on ReportHost's website and if you ever leave to another software, they'll sue you for trying to take your comments because ReportHost believes your comments are their property." (*Id.* at 8.)

• "I wasn't even aware Report Host was still in business. I stopped using them years ago due to their horrible customer service and way I was treated by their staff."; "They're ridiculous." (*Id.* at 11.)

• "For all the time and money, they could have used that to, you know, actually crete [*sic*] a better product to attract new users." (*Id.* at 12.)

• "ReportHost is still targeting Spectora users by viewing their sample reports and requesting Spectora remove them or face legal consequences. Just received notification a few weeks ago. They should take their time and energy and create a better product and actually listen to their customers instead of being petty. My bet is they are bleeding customers because there is superior software out there." (*Id.* at 13.)

• "I agree. Report Host sucks IMHO." (*Id.*)

Regarding the alleged "onslaught of 'one-star' reviews on Google.com," (Doc. 1 ¶ 164), ReportHost has not alleged that Spectora posted any of these reviews, nor is there evidence that any of these reviews were posted as a direct result of anything that Spectora knowingly said falsely. Nor has Spectora alleged that anyone has ever seen the one-star reviews, or that anyone based any decision about whether to engage in business with either party on these reviews. What is clear from the undisputable evidence, however, is that ReportHost, despite claiming to "be a nationally recognized leader in home inspector software" that "has authored more than 15,000 narratives for home inspectors' commercial use" (Doc. 1 ¶ 1), is a virtually unknown entity, and never in its over 21-year history (Ex. 6) have reviews on Google.com (Maps) been relevant to its

business. Indeed, until recently, it had only *one*, 9-year-old review on Google.com.

At a bare minimum Plaintiff must both plead and prove, through admissible evidence, that it was *actually* damaged because *Spectora* lied and that *Spectora's* lie *caused* that damage by impacting the decisions of a significant portion of home inspectors to do business, or not, with Report Host. It has not done and cannot do this.

## V.    <u>CONCLUSION</u>

Count V of the Complaint, for alleged violation of the Colorado Consumer Protection Act, cannot survive either a facial attack under Rule 12(b)(6), 8(a), and 9(b), nor an evidentiary one, under Rule 56. Having pleaded a non-viable claim and seeking to hold Spectora liable under that claim for exercising its free speech right to comment about matters of public concern, in a public place, not only must ReportHost have judgment ordered against it, but it also must be ordered to repay the legal expenses that Spectora has incurred defending it. Accordingly, Spectora respectfully requests that the Court order that Count V of the Complaint be dismissed with prejudice and that ReportHost reimburse Spectora its attorneys' fees incurred in connection with this Motion. Upon the Court's order, Spectora will confer with ReportHost about the amount of its fees, and, should the parties fail to reach agreement, Spectora will then present its fee request to the Court.

DATED this 9th day of September, 2024.          Respectfully submitted,

                                            By:  */s/Matthew A. Morr*
*/s/Lynn E. Rzonca*                              Matthew A. Morr
Lynn E. Rzonca                                   Ballard Spahr LLP
*/s/Benjamin N. Simler*                          1225 17th Street, Suite 2300
Benjamin N. Simler                               Denver, CO 80202-5596
Ballard Spahr LLP                                Telephone: 303.299.7366
1735 Market Street, 51st Floor                   Facsimile: 303.296.3956
Philadelphia, PA 19103-7599                      Email: morrm@ballardspahr.com
Telephone: 215.665.8500
Facsimile: 215.864.8999                          *Attorneys for Defendant Spectora, Inc.*
Email: rzoncal@ballardspahr.com
Email: simlerb@ballardspahr.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2024, a true and correct copy of the foregoing **DEFENDANT SPECTORA, INC.'S SPECIAL MOTION TO DISMISS COUNT V PURSUANT TO C.R.S. § 13-20-1101** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to all parties registered for CM/ECF.

*s/ Sherri L. Clark*
Sherri L. Clark