IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01813-PAB-SBP

REPORTHOST LLC,

       Plaintiff

v.

SPECTORA INC.,

       Defendant

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, FILED SEPTEMBER 9, 2024 (DKT. 15)**

**I.   INTRODUCTION**

Plaintiff ReportHost LLC ("ReportHost") is a small business competing in the home inspection marketplace against the much larger Defendant Spectora, Inc. ("Spectora"). ReportHost maintains viability through quality content[1] available only through the ReportHost platform and brought a previous action against Spectora when it unlawfully offered that content to its customers. Although the parties settled that action, following the settlement and in the face of the parties' Agreement, Spectora found new ways to infringe and induce infringement of ReportHost's content, all the while focusing blame on ReportHost to keep its own customers and further harm ReportHost's business. ReportHost is forced once more to rely on the courts to enforce its rights.

Spectora now brings a motion to dismiss the lion's share of ReportHost's claims, arguing

---

[1] Spectora, via footnote, makes the claim that "ReportHost falsely claimed to have authored content in fact originated by InterNACHI," a third-party representing the home inspection consuming public. ECF 15 at 2, n.1. This allegation is unfounded, untrue, and ReportHost suspects it is based on information that has not been accurately portrayed to Spectora.

1

they are not appropriately pleaded. ReportHost disputes this argument and files the following briefing in support of the well-pleaded allegations in ECF 1 (the "Complaint").

## II. STANDARD OF REVIEW

In determining a motion to dismiss, the Court's "function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The court, "after considering the complaint . . . in the light most favorable to" Plaintiff, must determine if "it appears beyond doubt [Plaintiff] can prove no set of facts in support of [plaintiff's] claim that would entitle [plaintiff] to relief." *Jacobsen*, 287 F.3d at 942. "Thus, [this Court] need only determine whether the complaint and incorporated documents are sufficient to allege" Defendant infringed Plaintiff's rights. *See id*. "To determine if dismissal is appropriate, this Court 'must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.'" *See Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F. Supp. 2d 1135, 1139 (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

## III. ARGUMENT: COUNTS I-V OF THE COMPLAINT ARE SUFFICIENTLY PLED

### A. Counts I-III (Copyright Infringement Claims) - DISPUTED.

Spectora argues ReportHost's Complaint is deficient in that it "fails to allege facts sufficient to support any copyright infringement claim—direct, vicarious, or contributory." ECF 15 at 4. Without citing to authority, Spectora claims ReportHost has failed to identify the infringed works, what is original about the infringed works, the identity of the alleged infringers, how the alleged infringers accessed the works, what the infringing copies are, and what similarities exist

between the copies and the original work. *See id*. But a well-pleaded complaint for copyright infringement requires particular elements that are supported by case law. ReportHost's Complaint sufficiently pleads these.

### 1. Counts I-III, Copying/Direct Infringement - DISPUTED.

Specifically, to sufficiently plead copyright infringement, ReportHost must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Spectora argues that "ReportHost never identifies either the original work(s) allegedly copied nor the allegedly infringing copy(ies), nor the direct infringers' access to the original work(s), nor any claimed similarities between that/those work(s) and the allegedly infringing copy(ies)." ECF 15 at 5.

But ReportHost does. A non-exclusive list, all from the Complaint, includes:

- Spectora owns 12 registrations for its copyrighted works. P. 3, ¶ 9.

- These registrations consist of ReportHost's "proprietary home inspection narratives," which are stored in "templates." Pp. 4-5, ¶ 21.

- Spectora hosts a library of "templates" for use in generating a home inspection report. P. 6, ¶ 31.

- This library contains unauthorized copies of ReportHost's data templates. *Id.*, ¶ 33.

- Spectora's clients use this library to create reports. *Id*., ¶ 32.

- Spectora copies all data from templates uploaded to its library into a "Template Database." P. 7, ¶ 41.

- Spectora's clients access Spectora's library of templates, and thereby access ReportHost's copyrighted works. P. 8, ¶ 48.

- At least some of the reports created by using this library are "verbatim or near-

3

- verbatim" reproductions of ReportHost's copyrights. *See* P. 10, ¶ 65.

- Spectora's database contains significant content that is substantially similar to the copyrighted works. P. 14, ¶ 101.

- Spectora makes this content available to its consumers. *Id*., ¶ 102.

- Spectora makes and edits copies of ReportHost's copyright, through its "Underlying Report" and "Sample Report" mechanics. Pp. 14-15, ¶¶ 103-106.

ReportHost has also previously provided Spectora with the deposit copies for these copyright registrations. It has submitted hundreds of DMCA takedown requests to Spectora. The parties' settlement agreement, which Spectora has affixed to its motion to dismiss, contemplates ReportHost's provision of material to Spectora so that Spectora could search for and delete ReportHost's material on the Spectora platform. *See* Complaint, p. 16, 18, ¶¶ 120, 137; *but cf.* Complaint, ¶¶ 60-62. To now claim that Spectora is not "on notice" of ReportHost's copyrighted works seems disingenuous.

Spectora's reliance of *Flava Works* is misplaced. *See* ECF 15 at 5 (citing *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012). There, the plaintiff set forth a "mere allegation that 'Defendants downloaded copyrighted videos of Flava Works . . . and posted and distributed the aforesaid videos on other websites.'" *Flava Works*, 2012 WL 2459146, at *2. The plaintiff argued that, because the case was "simple," it should not have to make specific factual allegations. *Id*. It appears the plaintiff did not even provide a copyright registration number. *See Art of Design, Inc. v. Pontoon Boat, LLC*, 2017 WL 3608219, at *4 (N.D. Ind. Aug. 22, 2017) (comparing *Flava Works*, the court wrote "Plaintiff here at least provided the copyright registration numbers for its designs, but that does not suffice. Glaringly absent from the complaint are any descriptions or explanations as to what the designs are or look like.").

Conversely, in the present pleading the works are sufficiently described, examples are given (*see, e.g.,* Complaint at p. 10, ¶¶ 67-68), and Spectora has been *given* the deposit copies. Some of these reproductions are verbatim. *See La Resolana Architechs, PA v. Reno, Inc.*, 555 F.3d 1171, 1179 (10th Cir. 2009) (discussing "striking similarity" as a means to establish factual copying). The plaintiff in *Art of Design* didn't even "identif[y] an allegedly infringing work produced by Defendants." *Art of Design*, 2017 WL 3608219, at *5.

Spectora argues that ReportHost must "plead" the method of access to ReportHost's work. ECF 15 at 6 (citing *King Recs., Inc. v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006)). The Middle District of Tennessee actually held that these options of showing access are "forms of circumstantial evidence [] accepted as evidence of reasonable access." *King Recs., Inc.*, 438 F. Supp 2d at 846. Even if this is the case, ReportHost knows of no rule that requires it to plead every bit of evidence it will bring forth to prove its case.

Notably, Spectora does not even address the DMCA takedown requests ReportHost submitted and Spectora failed to timely address. *See* Complaint, p. 10, ¶ 69. ReportHost has provided Spectora with sufficient facts to support copyright infringement under the appropriate pleading standard.

### 2. Count II (Vicarious Infringement), Profit - DISPUTED.

Next, Spectora argues ReportHost "alleges only in conclusory terms that Spectora has a direct financial interest" in its customers' infringing activities. *See* ECF 15 at 7. Spectora then goes on to identify the non-conclusory way in which ReportHost alleges Spectora's direct financial interest, quibbling with the word "use." Spectora also states that the complained-of "editing of material" is "the deletion of material ReportHost has claimed to own copyrights in." *Id*. (italics omitted). But this is not the case.

5

First, "use" is a reference in the Complaint not in any patent sense but to access and ability to copy. It should be clear that the Complaint identifies Spectora's customers as "using" ReportHost's copyrighted works to create infringing reports with narratives generally restricted to ReportHost's platform. *See* Complaint, p. 5, ¶ 23 (identifying the proprietary "home" for ReportHost narratives, i.e., the copyrighted works) and p. 16, ¶ 123 (alleging Spectora failed to stop its customers from "using, distributing, publishing, making derivative works, or copying" ReportHost's narratives). Next, Spectora is somewhat correct in identifying the Settlement Agreement as relevant; "editing of material" has its own section in the Complaint: "Spectora's Editing of Infringing Reports and Templates." Complaint, p. 13-14, ¶¶ 90-97. Spectora was not authorized to make copies of any of ReportHost's materials and distribute them to its consumers. *See* ECF 15, Ex. 1 at § 4.a.-c. It was supposed to delete all offending material. *See id*. Instead, Spectora chose to make new copies of already infringing works and engage in distribution and encouragement of the creation of derivative works. Rather than comply, Spectora picked a path that would attract and appease infringing consumers, and ReportHost has alleged facts in support.

There are a multitude of reasons why Spectora's consumers pay Spectora: one of them is that Spectora is complicit in infringing ReportHost's works. ReportHost does not need to plead "that *infringement* is *the* reason Spectora's customers pay Spectora." *See* ECF 15 at 8 (italics in original). Spectora's own case citation from the 9th Circuit stands for this proposition: there, the plaintiff did "not contend that anyone visited [defendant's] website in order to view [plaintiff's] photographs or purchased his services because they saw the photographs." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 830 (9th Cir. 2019). But here, ReportHost does allege "Defendant Spectora's offering and editing of material using the Copyrighted Works outside of ReportHost's platform acts as a draw to Spectora's Clients." Complaint, p. 17, ¶ 125. ReportHost does allege "Spectora's

6

Clients are attracted to Spectora's platform because it enables them to use the Copyrighted Works without using ReportHost's platform." Complaint, pp. 16-17, ¶ 124.

Spectora's own exhibit belies its argument that Spectora does not profit from infringement on its platform. *See* ECF 15, Ex. 4 at p. 9 (Spectora identifying that Spectora is "doing [its] best to minimize impact, while still allowing clients to get the reports they paid for!"). Regardless, at this stage ReportHost merely needs to have plausibly alleged the elements of the relevant cause. It has done so.

### 3. Count II (Vicarious Infringement), Right and Ability - DISPUTED.

Spectora argues that ReportHost does not allege Spectora had "both the legal right and practical ability" to stop Spectora's customers' infringing activities. ECF 15 at 8. But ReportHost has so alleged. The Complaint includes the following allegations:

- Spectora has the ability to edit content on its system. P. 16, ¶ 119.
- Spectora does edit content on its system in such a way that content from a template on its system may be disabled or changed so that generated reports do not contain that content. P. 13, ¶ 92.

Spectora's right and ability to control content through its sophisticated template database is at the core of this claim. Its systems are able to monitor for ReportHost content; ReportHost has alleged that Spectora sent missives to its consumers flagging this very content. *See id.* at p. 12, ¶ 83. Unlike *Viesti*, ReportHost has identified the relevant infringers, Spectora's consumers, rather than simply pleading "the infringing conduct of other entities." *Viesti Assoc. v. Pearson Educ., Inc.*, 2013 WL 4052024, at *8 (D. Colo. Aug. 12, 2013); *see id*. ("Given that no third parties are identified in the complaint, Viesti's claim that Pearson had the right to control these unidentified third parties is speculative and conclusory"). It has sufficiently pleaded a claim.

7

4. **Count III (Contributory Infringement), Knowledge/Intent - DISPUTED.**

ReportHost explicitly alleges, in the Complaint, that:

- Spectora informed its customers that certain templates and reports were to be deleted. P. 11, ¶ 74.

- Spectora knew that these particular templates and reports were infringing and suggested use of a Google Drive to its consumers for these particular items. P. 12, ¶¶ 80-82.

Again, Spectora's reliance on *Viesti* is misplaced. There, the pleading standard was not met; the allegations were threadbare and did not include the requisite "affirmative steps taken to foster infringement" that were required. *See Viesti Assoc.*, 2013 WL 405202, at *7 (citing *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, (2005)). Finally, ReportHost need not argue "*all* uses of Google Drive are, or are intended to be, used for infringement." *Cf.* ECF 15 at 9 (citing *Grokster*, 545 U.S. at 934-35). This is not an action where ReportHost sues Google, claims Google Drive is an infringement engine, or that the staple article rule should be overturned; ReportHost is asking this Court to recognize that it has alleged "statements or actions directed to promoting infringement" on the part of Spectora. *See Grokster*, 545 U.S. at 935.

While ReportHost believes most of Spectora's arguments fail, this one borders on frivolous.

5. **Counts I-III, Statutory Damages/Attorneys Fees - DISPUTED.**

ReportHost agrees with Spectora that instances of ongoing copyright infringement, commenced prior to obtaining a registration and "without cessation for any appreciable duration," are not amenable to an award of statutory damages or attorneys' fees under 17 U.S.C. § 412. *See* ECF 15 at 10 (citing *CA INC. v. Rocket Software, Inc.*, 579 F. Supp. 2d 355, 364 (E.D.N.Y. 2008).

8

But Spectora is incorrect in claiming "the Complaint alleges that Spectora never stopped infringing." *See id*. The Complaint particularly alleges, in relevant part, that this action is "for *new acts* of willful infringement of ReportHost's exclusive rights under the Copyright Act." Complaint, p. 2 at ¶ 4 (emphasis added); *see also* Complaint, p. 9 at ¶ 57. Notably, these acts are not of the same kind as those committed prior.

Spectora's conduct concerning incorporating ReportHost content into a template database, modifying its customer templates, and encouraging infringement via Google Drive were *not* at issue in the prior litigation and were not a subject of the 2023 Settlement Agreement. Indeed, these acts are "not of the same kind" of infringement as Spectora's hosting of home inspection reports. *See Rosen v. Netfronts, Inc.*, 2013 WL 3467205, at *3 n.3 (C.D. California, July 9, 2013) (citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008). As a result, the ongoing infringement doctrine does not apply.

In *Derek Andrew*, the defendant affixed garments with hang-tags that reproduced the plaintiff's copyrighted art. *See Derek Andrew*, 528 F.3d at 698. At the time plaintiff discovered the infringement, plaintiff had not yet secured a copyright registration. *Id.* at 699-700. The court held that defendant's post-registration use, even if "attached to new garments made and distributed after" the registration date, did not alter the use and found the infringement to be continuing and not subject to an award of attorneys' fees or statutory damages. *See id*. at 701-702.

Conversely, in *Rosen*, the defendant displayed and sold plaintiff's copyrighted photos "through catalog" prior to the plaintiff's copyright registration date. Rosen, 2013 WL 3467205 at *3. The court found plaintiff "cannot pursue statutory damages arising out of the copying and offers of sale that occurred in connection with [defendant's] catalog." *Id*. However, statutory damages were available for defendant's infringement through his *website*, which commenced after

9

the registration date. *Id.* While the court noted that there had been a long period of cessation of infringement, most tellingly was the court's footnote: the catalog infringement was "irrelevant to the analysis of whether continuous infringement occurred through [defendant's] website, because those acts of infringement are not 'of the same kind.'" *Id.* at n.3 (citing *Derek Andrew, Inc.*, 528 F.3d at 699).

Here, there exists no "ongoing" series of acts that can be considered the "same kind." Instead, Spectora has purposefully engaged in new acts of willful infringement and encouraged its customers to create infringing backup copies. Denying ReportHost the benefit of its registration, effective prior to these new kinds of acts, would not advance either purpose of § 412. *See Derek Andrew, Inc.*, 528 F.3d at 700 (two "fundamental purposes" of § 412 are incentivizing prompt registration and "encourage[ing] potential infringers to check the Copyright Office's database"). And ReportHost has carefully requested "actual damages and Defendant's ill-gotten profits for infringement occurring after August 29, 2023," not any recompense related to earlier acts. *See* Complaint, pp. 15, 17, 19, ¶¶ 113, 126, 142.

B.  **Counts IV-V (False Advertising/Deceptive Trade Practices) – DISPUTED.**

ReportHost brings claims pursuant to 15 U.S.C. § 1125(a) and C.R.S. § 6-1-105. Spectora (initially) correctly identifies the alleged conduct giving rise to these causes of action: its provision and commentary concerning subpar narratives and attribution to ReportHost, but mischaracterizes them as "made either by e-mail or phone to individuals, or an internet chat board." *See* ECF 15 at 10-11. In reality, ReportHost alleges Spectora "cite[d] particular content in reports[] that a reasonable consumer would think would amount to a baseless claim made by ReportHost." Complaint, p. 21, ¶ 160. This was done in October 2023. P. 20, ¶ 159. The content cited by Spectora was not ReportHost content and consisted of generic or subpar narratives. P. 19, ¶¶ 146-150. This was not only *likely* to mislead consumers, it did in fact mislead consumers. Pp. 12, 19, ¶¶ 77, 84,

10

148. Despite being aware of the backlash this caused, Spectora failed to make any corrective activities and allowed consumers to continue to believe that ReportHost made claim to generic narratives. P. 21, ¶ 161.

*Vincent v. Utah Plastic Surgery Soc.* is not applicable; there, the complaint "contain[ed] no such factual allegation or any other specific factual allegation on the issue of actual consumer deception." 621 F. App'x 546, 550 (10th Cir. 2015). Its allegations were "wholly unsupported by even a single relevant fact." *Id*. But ReportHost has alleged that consumers were deceived and reacted to this deception on the InterNACHI message board. *See* Complaint, p. 12, ¶ 84. This allegation is not intended to show liability, but to show consumer deception. It is sufficient for purposes of the claim.

ReportHost agrees with Spectora's citation to the elements of false advertising and CCPA claims. *See* ECF 15 at 11. However, ReportHost's Lanham Act claim is brought under § 1125(a) and also incorporates a § 1125(a)(1)(A) cause for "false designation of origin." Pursuant to 15 U.S.C. 1125(a)(1)(A), a civil action may lie if a party "uses in commerce . . . any . . . false or misleading description [or] representation of fact[] which . . . is likely to . . . cause mistake[] or to deceive as to the . . . origin, sponsorship, or approval of [that party's] goods, services, or commercial activities by another." "To prevail on a claim of false designation of origin, the moving party must show: (1) defendant's designation of the source of a product was false, (2) defendants caused goods so identified to enter commerce, and (3) defendant's false statement is likely to damage the moving party." *Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 946 (D. Colo. 1988) (citing 15 U.S.C. § 1125(a)). Notably, "evidence of actual confusion is not necessary to Lanham Act liability." *Id*. at 948.

Here, ReportHost alleges in the Complaint:

11

- Spectora falsely attributed the source of subpar narratives to ReportHost, sending them to Spectora customers through interstate commerce. P. 19, ¶ 146.

- Spectora, aware that consumers had been misled, failed to correct this false statement. *Id.,* ¶¶ 149, 150.

- ReportHost suffered and is likely to suffer harm. Pp. 19, 20, ¶¶ 148, 156.[2]

### 1. Counts IV-V, False or Misleading Statements - DISPUTED.

ReportHost agrees that "[a]llegations of deceptive trade practices under the" CCPA claims must meet the heightened pleading requirements of Rule 9. *See Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985). "More specifically," the Tenth Circuit "requires a complaint alleging fraud to '[1] set forth the time, place and contents of the false representation, [2] the identity of the party making the false statements and [3] the consequences thereof.'" *Koch v. Koch Indus.,* 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)), *cert. denied*, 531 U.S. 926 (2000). Rule 9(b) does not, however, "require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind." *Trussell v. United Underwriters, Ltd.*, 228 F. Supp. 757, 774 (D. Colo. 1964).

Contrary to Spectora's argument that "the Complaint does not identify the time, place, or content" of Spectora's conduct, the Complaint does just that:

- Spectora cited the false, subpar narratives to consumers in October 2023. Pp. 19-21, ¶ 146, 159-160.

- "On information and belief, Defendant Spectora flagged some content in some

---

[2] Notably, the Lanham Act provides that parties seeking injunctive relief under its auspices are entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a).

12

- templates and reports hosted on the Spectora platform for deletion, and misled consumers that this content was claimed by ReportHost even though that content was not ReportHost content." P. 12, ¶ 83.

- "On information and belief, Spectora informed its consumers that certain subpar narratives in their reports and templates were claimed by ReportHost." P. 19, ¶ 146.

- "These particular narratives were not part of the Copyrighted Works." *Id.*, ¶ 147.

- Despite knowledge of and ability to, "Defendant Spectora did not correct" multiple consumers' disparaging comments of ReportHost. *See* pp. 19, 21, ¶¶ 150, 161.

   **2. Count IV (Lanham Act), Commercial Advertising - DISPUTED.**

Spectora attempts to reframe ReportHost's argument, confusing the pleaded facts concerning the actual conduct, the flagging of subpar narratives (which it understands, *see* ECF 15 at 10-11)[3], with pleaded supporting facts concerning Spectora's emails and phone calls. *See id.* at 13. Spectora then cites to 10th Circuit authority for the proposition that "commercial advertising or promotion" requires extensive dissemination to the relevant purchasing public. *Id.* (citing *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000). Spectora also claims that the Complaint does not allege Spectora was involved in promotion or advertising of "products or services—only the parties' prior litigation positions." *Id.* Spectora likens its alleged acts to "content moderation policies." *See id.* (citing *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020)).

Spectora does not contextualize *P&G*. In *P&G*, the court was quoting the four-part test adopted by this circuit to determine "whether [a] representation constitute[s] 'commercial

---

[3] Spectora acknowledges that "ReportHost alleges 'Spectora informed its consumers that certain subpar narratives in their reports and templates were claimed by ReportHost.'"

13

advertising or promotion' under § 43(a)(1)(B)." *P&G*, 222 F.3d at 1273. Specifically, that test evaluates whether a statement is: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.'" *Id.* (quoting *Gordon & Breach Science Publishers, S.A. v. American Institute of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)). "While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.*

Here, ReportHost has alleged that "Spectora informed its consumers that certain subpar narratives in their reports and templates were claimed by ReportHost." Complaint, p. 19, ¶ 146. This is sufficient to qualify for dissemination to the relevant purchasing public.

Spectora also does not contextualize *Prager*. In *Prager,* defendant YouTube had made statements about its "Restricted Mode" in explanation of the particular "user tool." *Prager*, 951 F.3d at 1000. The Ninth Circuit found it to be a "commonsense conclusion that representations related to Restricted Mode, such as those in terms of service, community guidelines, and contracts are not advertisements or a promotional campaign." *Id.*

But Spectora was not distributing a user manual; its distribution was "made for the purpose of keeping Spectora customers on the Spectora platform and not using the ReportHost platform." Complaint, p. 20, ¶ 153. And Spectora's own exhibits show that the affected relevant consuming base received "an email identifying the templates that needed changes." ECF 15, Ex. 4 at p. 13. ReportHost has sufficiently alleged the appropriate elements.

### 3. Count V (CCPA), Significant Public Impact - DISPUTED.

Spectora mischaracterizes the "significant public impact" of ReportHost's claim.

ReportHost has alleged that the significant impact is felt because "actual or potential consumers of ReportHost's services may be diverted from subscribing to ReportHost's services." Complaint, p. 21, ¶ 165. This is supported by the claim by a relevant consumer that a petition has been started with "over 1200 signatures" against ReportHost. *Id.*, ¶ 163. This element is sufficiently alleged.

### 4. Counts IV-V, Impact/Causal Damage - DISPUTED.

Spectora argues ReportHost has not sufficiently alleged damages and that ReportHost's damages allegations are "more anemic than, or substantively identical to, those held insufficient in" the 10th Circuit's review of *Vincent*. ECF 15 at 15 (citing *Vincent*, 621 F. App'x at 551). But, as previously discussed, *Vincent* is not applicable here: there, "Plaintiffs' appellate brief d[id] not direct th[e] court to the paragraphs in the complaint where these allegations appear." *Vincent*, 621 F. App'x at 550-551. In fact, "the complaint [did] not contain a single factual allegation supporting their 'labels and conclusions.'" *Id.* at 551 (citation omitted).

ReportHost's allegations reference and discuss the home inspection industry prevalent on the InterNACHI platform and particular harmful activities. Complaint, p. 21, ¶¶ 162-164. These activities are inherently associated with lost goodwill, lost potential customers, and associated lost profit. The harm represented threatens ReportHost's participation in "the industry." *See id.*, ¶ 163.

## IV. CONCLUSION

Plaintiff has plausibly pleaded its claims and Defendant's Motion to Dismiss should be denied.

                                                   <u>s/ Ethan B. Vodde</u>
                                                   ***Ethan B. Vodde***
                                                   Vodde IP, PLLC
                                                   5428 S. Regal St. #30956
                                                   Spokane, WA 99223
                                                   Phone: (509) 290-0667
                                                   Email: <u>ethan@voddeip.com</u>
                                                   ***Attorney for Plaintiff ReportHost LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, I electronically filed the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Defendant's counsel of record's email addresses.

s/ Ethan B. Vodde
*Ethan B. Vodde*
Vodde IP, PLLC
5428 S. Regal St. #30956
Spokane, WA 99223
Phone: (509) 290-0667
Email: ethan@voddeip.com
*Attorney for Plaintiff ReportHost LLC*

16