IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01813-PAB-SBP

REPORTHOST LLC,

    Plaintiff,

v.

SPECTORA, INC.,

    Defendant.

**DEFENDANT SPECTORA, INC.'S REPLY TO REPORTHOST'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DOC. 22)**

    Since 2019, ReportHost has hounded Spectora with unfounded claims that it owns copyrights for certain boilerplate home inspection report text, and that Spectora and its users were infringing by including similar text in templates and reports built using Spectora's web-based inspection report software. (Ex. 2, ¶¶ 22-54.) ReportHost's hundreds of demands became so disruptive that Spectora resorted to building a custom self-serve tool just for ReportHost to submit takedown notices. (Id. ¶¶ 52, 55, 57.) ReportHost refused to use it. Its goal was to burden Spectora, so it continued to spam Spectora's inboxes instead. (Id. ¶¶ 56, 58.)

    Four years later, ReportHost sued Spectora in this Court, alleging (among other things) that Spectora and its customers used, made, distributed, and published unlawful copies of ReportHost's supposedly original "Copyrighted Works," in various ways, including in Spectora's template libraries, in users' own templates, in inspection reports, and in sample reports, and that Spectora "facilitated and induced" its customers to do so. (Id. ¶¶ 3, 8, 28-47, 49-50, 52, 61-63, 66-71, 74, 83-90, 96-101, 103-106, 125-127.) Those claims were meritless. Among other issues fatal to ReportHost's claims, the asserted text is not copyrightable and the asserted registrations invalid and fraudulently obtained. But like many litigants burdened with meritless litigation, Spectora settled with ReportHost in order to protect its customers and itself

1

from further harassment and to permanently resolve ReportHost's claims. The parties' settlement agreement stated this intent expressly. (Ex. 1 at 1.)

ReportHost now seeks to deprive Spectora of the benefit of that resolution and weaponize the settlement to continue its harassment campaign with baseless "new" claims. These claims are the same as its previous claims, just repackaged. To those, the Complaint attempts to add claims for false advertising under the Lanham Act and the Colorado Consumer Protection Act—or, as it now says after reading Spectora's Motion to Dismiss, "false designation of origin." Those claims are premised on Spectora's carrying out the settlement agreement, under which ReportHost required it to delete certain users' reports and templates from its systems. And the alleged "falsity"? Spectora informing its users that some content in some of their reports and templates included terms that ReportHost provided to Spectora that identified what it claimed infringed.

Spectora moved to dismiss Counts I-V of the Complaint because ReportHost's allegations fail to meet the requisite pleading standards. The Opposition confirms the Complaint:

1. ***Never identifies the allegedly original material at issue***. It is not sufficient to simply point to two registrations that claim to cover twelve report templates, with thousands of narratives, that expressly disclaim copyright claims to "text," and to say that these two registrations give any meaningful notice about the original content ReportHost claims to own and have registered. Spectora cannot possibly ascertain from the Complaint's allegations which of the thousands of "narratives" in which templates are registered or at issue in this case;

2. ***Never identifies the accused direct infringement***. ReportHost fails to allege which of the unidentified but supposedly copyrighted passages were copied, or what in the complete "library" of Spectora's platform the allegedly infringing content is to be found (except for references to two DMCA takedown notices, which ReportHost has contended do not define its claims and which anyway are relevant only to Count II);

3. ***For Counts II or III, never identifies the additional facts for secondary liability for third-party infringement.*** ReportHost refers only vaguely to unidentified "customers" who supposedly made unidentified infringing copies of unidentified works, never alleging facts showing that Spectora had the right or ability to control those acts of infringement or that Spectora induced their infringements;

4. ***For Counts IV-V, never specifically identifies any false statements, advertising, or***

2

> *causally related harm*. ReportHost never specifically alleges any single false statement that Spectora made, on or in connection with any goods or services, let alone one that amounts to a false "designation of origin," that was made in "commercial advertising," that had a "significant public impact," or that caused ReportHost any harm.

I. **REPORTHOST FAILED TO OVERCOME THE SHOWING THAT ITS NEW COMPLAINT IS DEVOID OF FACTS TO PLAUSIBLY SUPPORT COUNTS I-V**

   A. **Counts I-III: No Facts Plausibly Alleging Copying/Direct Infringement**

The Opposition never meaningfully responds to the key issue Spectora's Motion raised: the Complaint fails to allege facts to plausibly support the legal conclusion of any copyright infringement (direct, vicarious, or contributory) because it never identifies what narratives ReportHost claims to own, to have registered its copyrights in, or to have been copied. *Conley v. Gibson*, 355 U.S. 41, 47 (1957), quoted in *Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276, 1281 (10th Cir. 2007) (complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) ("to present a plausible right to relief ..., it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom") (citations omitted). The Complaint's broad, vague, and conclusory allegations give no more notice to Spectora than they would to Microsoft if the Complaint alleged that "one or more Microsoft Word users pasted one or more unidentified passages from one or more books (with both copyright and public domain material) into one or more files stored in their Microsoft accounts." That lack of notice renders meaningless ReportHost's attempts to distinguish the law Spectora cites, including *Flava Works*, *Art of Design*, and *Bennett*. These and other cases hold time and again that a complaint for copyright infringement must provide enough information about what the plaintiff claims to own and to have registered, and what the offending copy is (or copies are), to allow a defendant meaningful notice of the claims.

ReportHost's Opposition does not dispute that the Complaint pleads only that:

- one or more unidentified Spectora "customers"

3

- allegedly copied one or more unspecified "narratives" from the ***thousands*** included in one or more of 12 unpublished templates that Spectora registered with the Copyright Office.

(*See* Opp'n at 3-4, citing Doc. 1 ¶¶ 9, 21, 31-33, 41, 48, 101-106.) Nor does the Opposition dispute that ReportHost's copyright registrations disclaim "text" (i.e., narratives), or that the Complaint never identifies which (if any) of the thousands of narratives are original to the registered templates and were allegedly copied. As the Motion to Dismiss established, that scant pleading fails to meet even the most basic notice pleading standards. *See Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012); *Art of Design, Inc. v. Pontoon Boat, LLC*, No. 3:16-CV-595 JD, 2017 WL 3608219, at *4 (N.D. Ind. Aug. 22, 2017). Those standards require ReportHost to identify what ***original*** content it claims to own and to have registered and to identify the alleged unlawful copy. *See Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2; *Art of Design*, 2017 WL 3608219, at *4. They do not allow ReportHost to say only than that it has registered copyrights in unspecified original works that Spectora and its nonspecific customers allegedly copied somewhere.

Other than generically listing two registrations covering 12 unpublished derivative works, the Complaint gives no information about which "narratives" ReportHost claims to have originally authored or registered. These derivative works contain thousands of "text" narratives, but the registrations expressly exclude "text" from their claims. (Ex. 3 at 1-2). Thus, the Complaint gives no notice of what—if any—text is the subject of a copyright registration. *Compendium of U.S. Copyright Office Practices* (3d Ed.) § 503.3 ("The U.S. Copyright Office only examines the authorship that is explicitly claimed in the application. It ***does not examine any authorship that is not claimed in the application***, and therefore, no *prima facie* presumption should apply to unclaimed authorship that appears in the work.") (emphases added). And ReportHost cannot initiate or maintain suit based on infringement of the disclaimed "text." 17 U.S.C. § 411(a) ("no civil action for infringement … shall be instituted until … *registration of the copyright claim* has been made in accordance with this title") (emphasis added); *Fourth*

4

*Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019).[1] Further, even if true, it does not matter that Spectora was provided deposit copies,[2] because "[t]he information provided in the ***application*** defines the [copyright] claim that is being registered," and ***not*** "the deposit copy(ies)." *Compendium* § 618.1 (emphasis added).

Assuming ReportHost even has any copyright-registered "narratives" for which it can bring suit, the Complaint's merely identifying <u>registration numbers</u> affords Spectora no meaningful notice of what those are, or what the copies are alleged to be. Such vagaries, if permitted to stand, will result in expensive, unconstrained, free-for-all discovery and motions practice. *See Byrne v. Nezhat*, 261 F. 3d 1075, 1128-1131 (11th Cir. 2001) ("disjointed pleadings make it difficult, if not impossible, to set the boundaries for discovery. Hence, discovery disputes are inevitable..."). Fortunately, "district courts have the power and the duty to define the issues at the earliest stages of litigation." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F. 3d 1290, 1333 (11th Cir. 1998). This Court should do so by dismissing Counts I-III.

**B.    <u>Counts I-III: Statutory Damages, Costs, And Fees Are Not Plausibly Demanded</u>**

Spectora's Motion established that the Complaint demands remedies not available for ReportHost's copyright infringement claims—statutory damages, attorney's fees, and costs—

---

[1] 17 U.S.C. § 103(b) ("The copyright in a … derivative work … does not imply any exclusive right in the preexisting material … [and] is independent of … any copyright protection in the preexisting material."); *id.* § 409(9) ("application for copyright registration" must identify both preexisting work not claimed and new "material covered by the copyright claim being registered"). ReportHost might believe its registrations grant it the right to sue for preexisting narratives that it authored and that are contained in the registered works—i.e., that the "effective registration doctrine" permits it to sue—but ReportHost is wrong. Even if the doctrine is still viable, its registrations do not satisfy its requirements. *See Roblox Corp. v. Wowwee Grp. Ltd.*, 660 F. Supp. 3d 880, 890-91 (N.D. Cal. 2023) (questioning "effective registration doctrine" after *Fourth Estate*, and holding even under that doctrine plaintiff "ha[d] not sufficiently alleged claims that these [preexisting] works are copyrighted" where registrations for the derivative works failed to identify the prior works with specificity).

[2] This allegation is made in Count II and incorporated into Count III (Doc. 1, ¶¶ 120, 137). It is not alleged, and thus may not be considered, for Count I (*see id.* ¶¶ 1-115).

5

because the alleged infringement began before ReportHost registered any copyrights. This alone is dispositive of ReportHost's demand for anything other than actual damages.

ReportHost's only response is to say the claimed post-settlement infringements are new acts "different in kind" from those of the preceding 5 years. That is not the test. The test is did "any infringement of copyright in [the] unpublished work commence[] <u>before the effective date of its registration</u>"? 17 U.S.C. § 412(1) (emphasis added). The Complaint here (like the one in the parties' prior case, Ex. 2) alleges that it did. Therefore, ReportHost's claims for statutory damages and attorneys' fees are impermissible as a matter of law. *See, e.g.*, *Segura v. Sofa Ent., Inc.*, No. 3:16-CV-0938-AC, 2017 WL 2532211, at *3 (D. Or. June 9, 2017). It is irrelevant that the Complaint seeks actual damages—the Motion to Dismiss does not challenge that demand.

ReportHost cites *Rosen* for its "different in kind" argument, a case that has never been followed but has been distinguished. *See, e.g.*, *Shakur v. Hot In Here, Inc.*, No. CV 24-1513-GW-MAAX, 2024 WL 3468939, at *4 (C.D. Cal. June 18, 2024); *McGucken v. Chive Media Grp., LLC*, No. CV 18-01612-RSWL-KS, 2018 WL 5880751, at *5 n.7 (C.D. Cal. Nov. 8, 2018). In *Rosen*, a pre-registration course of infringement involved paper catalogs that stopped completely, and then five or six years later, after registration, a brand new course of infringement involving only digital material began. All *Rosen* stands for is that a five- or six-year gap between two separate types of infringement shows the later acts did not continue earlier infringement, and thus infringement "commenced" anew after a lengthy gap. *See, e.g.*, *Segura*, 2017 WL 2532211, at *3 ("As long as some infringement occurred pre-registration, courts have held post-registration infringement is continuous even with periods of a few months to more than two years between infringements.") (citing cases and distinguishing *Rosen*). And unlike in *Rosen*, here there is *no* alleged gap in time, and the Complaint alleges that Spectora (and its customers) have been using, distributing, publishing, and copying its works the same way: using Spectora's software. The claims for statutory damages, costs, and attorney's fees fail.

6

C. **Count II: Spectora's Right and Ability to Control Customers' Infringements Is Not Plausibly Pleaded**

As in *Viesti*, which ReportHost attempts to distinguish unsuccessfully, the Complaint here fails to identify any direct infringer whose infringing conduct Spectora has the right or ability to control. The Opposition admits that the Complaint only vaguely references that some unidentified "customers" of Spectora are the direct infringers. And the only allegations it points to (Doc. 1 ¶¶ 83, 92, 119) show Spectora only has the ability to act to *rectify* infringement if and after it learns of infringement that already occurred (something the Settlement Agreement accounts for by prescribing a procedure for this situation). The Complaint makes no allegations to support a conclusion that Spectora has either the right or ability to control these unidentified customers' acts, infringing or otherwise. This is yet another reason Count II fails.

D. **Count III: Spectora's Knowledge or Intent to Induce Specific Acts of Direct Infringement Not Plausibly Pleaded**

ReportHost now appears to acknowledge Count III should be limited strictly to Spectora's allegedly informing customers about, or allegedly assisting them to use, Google Drive to backup reports that were set to be deleted pursuant from Spectora's systems pursuant to the Settlement Agreement. But ReportHost does not address the big problem it has: "the Complaint [never] identify *any instances of infringement* about which Spectora was actually aware, or any clear expression or affirmative acts specifically intended to and that *did induce infringement*." (Mot. at 9.) There cannot be contributory liability without a direct infringement caused by the knowing contributory acts. The Complaint does not allege (or identify) copies made because of Spectora's acts and or that Spectora knew or specifically intended for such copies to actually infringe (a particularly acute problem for ReportHost now that it admits it has no valid claim of copyright ownership in content it previously claimed to own, *see* Doc. 1 ¶ 83; Spectora's Reply re Special Motion to Dismiss Count V). Count III fails for this reason, too.

7

### E. Counts IV-V: Complaint Never Specifically Identifies Any False or Misleading Statements or Deceptive Trade Practices

ReportHost does not dispute (and so concedes) that Counts IV and V are subject to Rule 9(b)'s heighted pleading requirements. And yet the Opposition points only to general allegations. The only Spectora statements the Complaint specifically identifies are those on the InterNACHI message board—which ReportHost now concedes are not false statements underlying its claims.

In an attempt to salvage what the Complaint frames as false advertising claims under the Lanham Act and Colorado Consumer Protection Act—claims ReportHost now abandons—the Opposition tries to morph Counts IV and V into claims of "false designation of origin." (Opp'n at 11.) Even were it proper for ReportHost to change its theories now, these claims still fail.

As the allegations ReportHost points to confirm, the Complaint alleges that Spectora told its customers that ReportHost "claimed" to have authored and to have copyrights in certain "subpar" narratives that Spectora or its customers infringed by creating unauthorized templates and reports. But nothing in the Complaint alleges (much less with requisite particularity) that Spectora falsely told or suggested to anyone that even one report or template was *itself* created by ReportHost. Nor is it plausibly (nor with particularity) alleged that the individuals whose documents were flagged for their contents were or could be confused into thinking someone else (let alone ReportHost) created their own files in their own Spectora accounts.

Though ReportHost's Opposition now attempts to remedy these dispositive deficiencies through its briefing, the Tenth Circuit recently confirmed that a "false designation of origin" claim cannot be premised on a false claim of authorship under either 15 U.S.C. § 1125(a)(1)(A) (likelihood of confusion as to source) or § 1125(a)(1)(B) (false advertising). *Crocs, Inc. v. Effervescent, Inc.*, No. 2022-2160, 2024 WL 4376134, at *5 (Fed. Cir. Oct. 3, 2024) ("a [false] claim of authorship … does not give rise to a cause of action under Section 43(a)(1)(A) or (B)"); *citing Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 US 23, 31-35 (2003) (holding it would contravene congressional purpose to "[r]ecogniz[e] in § 43(a) a cause of action for

8

misrepresentation of authorship"). Said another way, the "'origin of goods' in the Lanham Act § 43(a)(1)(A) [does] not refer to the author of any idea, concept, or communication embodied in a good, but to the *producer of the tangible good itself*." *Sybersound Records, Inc. v. UAV Corp.*, 517 F. 3d 1137, 1144 (9th Cir. 2008). These claims, even as recast, fail.

### F. Count IV: Complaint Does Not Identify Any Advertisements

ReportHost also fails to identify any advertising supporting its Lanham Act claim. Abandoning its pleaded claims that the "advertising" consisted of emails, phone calls, or postings on an internet message board, the Opposition now argues that the required "advertising" was Spectora's merely informing users, before it deleted their content, that some of their content was flagged due to claimed infringement. But nothing in the Complaint alleges that Spectora's "flagging" of "subpar" narratives on its systems included anything that remotely approximates advertising (e.g., a sales pitch, or at least information about the parties or their products), and they did not. *See, e.g.*, *Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99-1877DT(MCX), 2000 WL 986995, at *8 (C.D. Cal. Feb. 22, 2000) (cease and desist notices are not advertising); (*See also* Doc. 16-3 (sample email).) ReportHost's Opposition also does not allege widespread distribution of any "flagged" "subpar narratives." Count IV fails here, too.

### G. Count V: Complaint Does Not Plausibly Allege Significant Public Impact

ReportHost's Opposition has no valid answer to Spectora's argument that the Complaint was required to plead facts showing a significant public impact. It identifies one email from someone (never identified) who claimed to have a petition to start a class action with many signatures. But the petition is not alleged to actually have existed, and no class action is alleged ever have been filed. It also identifies a handful of negative reviews on Google Maps and statements on an internet message board, but there is no alleged causal connection between the "deceptive trade practice" (flagging narratives) and any actual or potential consumer purchasing decision. At bottom, there is no allegation that any consumer purchased (or did not purchase)

9

anything *because* Spectora "flagged" "subpar narratives" it "falsely" implied that ReportHost "claimed." In short, there are insufficient allegations of any significant impact from the alleged deceptive trade practice. *See, e.g.*, *Alpine Bank v. Hubbell*, 555 F. 3d 1097, 1113 (10th Cir 2009).

### H.   Counts IV-V: Complaint Does Not Plausibly Allege Damages or Causation

ReportHost's Opposition points to Paragraphs 162-164 of the Complaint and says allegations of these types (a reference on the internet to the plaintiff by a slur, an email about a purported threatened class action asking plaintiff to leave the industry, and a handful of one-star Google reviews) are "inherently associated with lost goodwill, lost potential customers, and associated lost profit." But these allegations are not incorporated into Count IV, and thus cannot be considered for that claim. Thus, ReportHost concedes by omission that it failed to allege causal damages for its Lanham Act claim. And, as to the CCPA claim of Count V, there is no allegation that the individuals who started that internet thread, sent that email, or left those Google reviews knew of, let alone received, any of the "flagged" narratives that ReportHost says harmed it. Nor, as Spectora's Motion pointed out and ReportHost's Opposition failed to rebut, does the Complaint "allege that consumers *have* been diverted" from ReportHost.

## II.   CONCLUSION

For the foregoing reasons, and those reasons set forth in the Motion, Spectora's Motion to Dismiss should be granted and Counts I-V of the Complaint should be dismissed.

DATED this 15th day of October, 2024.   Respectfully submitted,

By: */s/Benjamin N. Simler*
**Lynn E. Rzonca**
**Matthew A. Morr**              **Benjamin N. Simler**
Ballard Spahr LLP                 Ballard Spahr LLP
1225 17th Street, Suite 2300      1735 Market Street, 51st Floor
Denver, CO 80202-5596             Philadelphia, PA 19103-7599
Telephone: 303.299.7366           Telephone: 215.665.8500
Email: morrm@ballardspahr.com     Email: rzoncal@ballardspahr.com
                                  Email: simlerb@ballardspahr.com

*Attorneys for Defendant Spectora, Inc*.

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Ethan B. Vodde (ethan@voddeip.com)
Kevin S. McPherson (km@mcpherson.law)
Joel G. MacMull (jmacmull@mblawfirm.com)
*Attorneys for Plaintiff ReportHost LLC*

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:
*N/A*

*/s/Benjamin N. Simler*
**Benjamin N. Simler**
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Email: simlerb@ballardspahr.com
*Attorneys for Defendant Spectora, Inc*
