IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01813-PAB-SBP

REPORTHOST LLC,

      Plaintiff,

v.

SPECTORA INC.,

      Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant Spectora, Inc.'s Motion to Dismiss Count I-V of the Complaint [Docket No. 15], Defendant Spectora, Inc.'s Special Motion to Dismiss Count V Pursuant to C.R.S. § 13-20-1101 [Docket No. 16], and Plaintiff ReportHost's Motion for Leave to File Surreply in Support of Plaintiff's Response to Defendant Spectora's Special Motion to Dismiss (Dkt. 16) [Docket No. 35].

Plaintiff ReportHost LLC ("ReportHost") filed responses to the motions to dismiss. Docket No. 22, 23. Defendant Spectora Inc. ("Spectora") filed a response to ReportHost's motion for leave to file a surreply. Docket No. 38. Spectora and ReportHost filed replies in support of their motions. Docket Nos. 33, 34, 39. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    FACTS[1]

ReportHost is a "nationally recognized leader in home inspector technology" that develops "language that is suitable for inclusion in home inspection reports." Docket No. 1 at 4, ¶¶ 16, 17.  ReportHost licenses its "software, templates, and associated narratives to customers to assist with the completion of home inspection reports."  *Id.*, ¶ 20.  ReportHost owns and controls United States copyrights that protect the "software, templates, and corresponding narratives it produces and non-exclusively licenses."  *Id.* at 3, ¶ 8.  A licensee accesses ReportHost's "proprietary home inspection narratives" through ReportHost's "proprietary software package."  *Id.* at 4-5, ¶ 21.  The software permits a licensee to "choose from a menu of narratives that best suit the customer's needs in completing certain portions of a home inspector report."  *Id.*  Based on the licensee's selection, ReportHost's software "populates a home inspection report by inserting these narratives into the report from the internal data template."  *Id.*  ReportHost does not offer its templates as a "stand-alone products."  *Id.* at 5, ¶ 22.  Rather, a licensee must use ReportHost's software to "choose a template and then select specific narratives to insert into the draft home inspection report."  *Id.*

To access ReportHost's software, customers agree to the Terms of Service agreement.  *Id.*, ¶ 23.  As provided for in the Terms of Service, ReportHost does not sell its templates or narratives to licensees; they are only accessible through ReportHost's software.  *Id.*  Licensees who agree to the Terms of Service receive a "non-exclusive,

---

[1]The well-pleaded facts below are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true, unless otherwise noted, for purpose of ruling on the motions to dismiss.

non-sublicensable, non-transferable, limited license to use the reports they generate through ReportHost's software." *Id.*, ¶ 24.

Spectora "operates in the home inspection industry by providing a suite of tools to its home inspector clients." *Id.* at 6, ¶ 30. One of the tools that Spectora offers is a library of templates (the "Spectora Library"). *Id.*, ¶ 31. Spectora also hosts home inspectors reports that are authored by Spectora's customers. *Id.*, ¶ 34. Spectora's customers use the Spectora Library to generate home inspection reports. *Id*. The Spectora Library contains "unauthorized copies of ReportHost's data templates." *Id.*, ¶ 33.

Spectora "encourages" its customers to create "Sample Reports" that can be viewed publicly by those interested in "procuring the services" of Spectora's customers. *Id.*, ¶ 35. Spectora "encourages" its clients to upload an "Existing Report" to Spectora's platform, which will serve as the "basis" for the Sample Report. *Id.*, ¶ 36. When a potential Spectora customer browses to the "sample report website," Spectora creates the Sample Report by making a copy of the Existing Report, editing certain information within the Existing Report, and then "publicly display[ing] the edited report." *Id.* at 6-7, ¶¶ 37, 38. Spectora generates Sample Reports through an "automated system" that draws data from actual reports that are stored in Spectora's system and which are provided to prospective clients of Spectora's customer. *Id.* at 8, ¶ 50.[2] The "substantive content" of each Sample Report and its corresponding Existing Report are the same.

_____

[2] ReportHost refers to these "actual reports" as the "Underlying Reports." *See* Docket No. 1 at 8, ¶ 50. It is not clear how an "Underlying Report" differs from an "Existing Report," as defined by ReportHost. Therefore, the Court will use "Existing Report" to refer to the actual reports uploaded by Spectora customers that then serve as the basis for the Sample Reports.

*Id.* at 7, ¶ 39. This is because, when Spectora makes the copy of the Existing Report for purposes of creating the Sample Report, the only data it removes is "related to personally identifiable information." *Id.* Spectora stores the content from the Existing Report and the Spectora Library in a database (the "Spectora Template Database"). *Id.*, ¶ 40. The Spectora Library contains a "limited number of data templates" that Spectora incorporates into the Spectora Template Database. *Id.* at 8, ¶ 45. Home inspection reports displayed on Spectora's platform are "constructed by drawing from the Spectora Template Database." *Id.* at 7, ¶ 41.

On or about February 23, 2019, ReportHost "received an anonymous tip via email that Defendant Spectora was hosting one or more of ReportHost's data templates in the Spectora Library." *Id.*, ¶ 43. ReportHost contacted Spectora, and Spectora informed ReportHost that "the offending data templates" had been deleted from the Spectora Library. *Id.*, ¶ 44. At that time, Spectora did not "reveal the existence of the Spectora Template Database." *Id.*

When a user "downloads or otherwise uses a template from the Spectora Library," Spectora creates an "individual template[ ]" from the Spectora Template Database, rather than maintaining individual templates in the Spectora Library itself. *Id.* at 8, ¶ 47. When a Spectora customer accesses the data templates in the Spectora Library, the customer is using Copyrighted Works that are owned by ReportHost. *Id.*, ¶ 48.

In early 2020, ReportHost discovered that Spectora's public website hosted Sample Reports that contained "a large quantity of the content from ReportHost's data templates." *Id.*, ¶ 49. ReportHost contacted Spectora, informing Spectora that the Sample Reports contained infringing content. *Id.* at 8-9, ¶ 52. Spectora "intimated" that

it would resolve the matter through a purchase of "all of ReportHost's assets and
business."  *Id.*  ReportHost and Spectora entered into a Non-Disclosure Agreement
"relative to this arrangement."  *Id.*  After "repeated attempts to resolve the matter,"
ReportHost filed suit against Spectora on February 23, 2022.  *Id.* at 9, ¶ 55; *see
ReportHost LLC v. Spectora Inc.*, Case No. 22-cv-00457-DDD-SKC (D. Colo. 2022).
On August 29, 2023, ReportHost and Spectora entered into a settlement agreement
that resolved the case.  Docket No. 1 at 9, ¶ 56.  The settlement agreement did not
"provide for release of any claims arising after the effective date of the Settlement
Agreement."  *Id.*, ¶ 57.  Pursuant to the settlement agreement, Spectora agreed to
"delete templates from its platform containing ReportHost content."  *Id.*, ¶ 58.
ReportHost "has consistently monitored Spectora's public displays of 'sample reports'
. . . evaluating each one to determine if they were copies of content in the ReportHost
data templates."  *Id.* at 8, ¶ 51.

     Spectora did not inform ReportHost that the templates in the Spectora Library,
rather than being "simply hosted by users," were generated from the Spectora Template
Database, and that Spectora integrated the Spectora Library and Spectora Template
Database.  *Id.* at 9, ¶ 59.  Spectora did not delete templates from the Spectora
Template Database or the Spectora Template Database itself.  *Id.*, ¶¶ 60, 62.  Spectora
continues to host Sample Reports and create them from the relevant Existing Reports.
*Id.* at 9-10, ¶ 63.

     If a Sample Report reproduces ReportHost's Copyrighted Works "verbatim or
near-verbatim, and to an appreciable degree," ReportHost submits a takedown notice to
Spectora pursuant to the Digital Millenium Copyright Act.  *Id.* at 10, ¶ 65.  While

Spectora disables access for "some reports relative to these takedown notices," it does not "immediately disable access for at least some" of the Sample Reports and Existing Reports. *Id.*, ¶ 66. When Spectora receives a takedown notice from ReportHost, Spectora, rather than removing access to the relevant "template and/or report" in its entirety, "edits the relevant template and/or report to remove only the content cited by ReportHost but leaves the remainder of the template and/or report intact and available." *Id.* at 13, ¶¶ 92-93. Drawing on the Spectora Template Database, Spectora made copies of content that included infringing material and edited them as to "highlight and remove" elements of the "reports/and or templates" that were allegedly infringing. *Id.*, ¶ 90. Spectora distributed these edited reports and templates to its customers. *Id.*, ¶ 91.

Pursuant to the settlement agreement, ReportHost and Spectora agreed to use "explicitly particularized language when referencing the parties' resolved dispute to the public." *Id.* at 11, ¶ 71. Spectora did not use this language. *Id.*, ¶ 73. Spectora "flagged some content in some templates and reports hosted on the Spectora platform for deletion, and misled consumers that this content was claimed by ReportHost even though that content was not ReportHost content." *Id.* at 12, ¶ 83. Through emails and "publicly accessible messaging boards on the internet," Spectora informed its customers that it would disable access to certain "reports" on Spectora's platform pursuant to the settlement agreement. *Id.* at 11, ¶ 72. Spectora informed customers that "certain templates and reports 'must be deleted pursuant to the litigation resolution'" and identified ReportHost as the other litigant. *Id.*, ¶ 74. Spectora told its customers that it had "chosen to settle the matter and protect our customers." *Id.*, ¶ 75. In a publicly

accessible Internet thread, entitled "Report Hoes, I mean Report Host nonsense,"

Spectora's principal Kevin Wagstaff invited customers to "jump on a call" with him

because he did not "want any [International Association of Certified Home Inspectors]

InterNACHI or Spectora member to go through getting sued."  *Id.* at 12, ¶ 78.  In this

thread, Spectora users spoke "derogatorily about ReportHost."  *Id.*, ¶ 84.  Spectora

"engaged with third-parties and made additional statements concerning the Settlement

Agreement, ReportHost, and the Copyrighted Materials, and the dispute."  *Id.*, ¶ 79.

Spectora advised the "relevant consuming public" that it had implemented a

Google Drive integration feature that "may be used as a means of copy infringing

reports and templates" prior to Spectora's deletion of the offending "reports and

templates."  *Id.*, ¶ 80.  Spectora, "through its agents," suggested that its customers use

the Google Drive Integration feature as a means to "bypass the deletion Spectora was

required to do pursuant to the Settlement Agreement."  *Id.*, ¶ 81.  Many Spectora users

used the Google Drive integration feature to make additional "infringing copies."  *Id.*,

¶ 82.

ReportHost informed Spectora that it had breached the settlement agreement.

*Id.*, ¶ 85.  Spectora did not "correct[] its mistake" and "continued to allow consumers to

believe these 'subpar' narratives were claimed by ReportHost."  *Id.* at 13, ¶ 89.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must allege enough factual matter that, taken as true, makes

the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.    ANALYSIS

ReportHost asserts six claims against Spectora: (1) copyright infringement; (2) vicarious copyright infringement; (3) contributory copyright infringement; (4) false or misleading statements in violation of the Lanham Act, 15 U.S.C. § 1125(a); (5) violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105; and (6) breach of contract.  Docket No. 1 at 14-23.  ReportHost moves to dismiss Counts One through Five.  *See* Docket No. 15 at 1.

### A.  <u>Copyright Claims: Counts I, II, and III</u>

#### *1.  Argument Common to All Three Claims*

Spectora argues that ReportHost's copyright claims, Counts I, II, and III, should be dismissed because ReportHost fails to identify the copyrighted work that Spectora allegedly infringed and give Spectora notice off the claims against it pursuant to Fed. R. Civ. P. 12(b)(6).  *See id*. at 5.  Spectora contends that ReportHost providing the copyright registration numbers for the "Copyrighted Works," *see* Docket No. 1 at 3, ¶ 9, is insufficient because such numbers contain "little information about the registered works' supposed original content."  Docket No. 15 at 5.  Spectora argues, while ReportHost alleges that the two certificate registrations protect "12 total works," ReportHost fails to identify the specific works or "any of their allegedly original content." *Id*.  In response, ReportHost contends that it sufficiently identifies the original works that were infringed because the complaint alleges that ReportHost "owns 12 registrations for its copyrighted work" and that these registrations "consist of ReportHost's 'proprietary home inspection narratives,' which are stored in 'templates.'"  Docket No. 22 at 3 (quoting Docket No. 1 at 4-5, ¶ 21).

While ReportHost does not identify the specific works that are protected by the provided copyright registrations, the Court finds that ReportHost need not identify the specific works in order to give Spectora sufficient notice of its claims.  ReportHost provides the copyright registration numbers and describes the protected works as being "data templates" and "narratives" that are used in the creation of home inspection reports.[3]  *See* Docket No. 1 at 3, 4-5, ¶¶ 8-9, 21-23.  These allegations are sufficient at the Rule 12(b)(6) stage.  *See Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 529 F. Supp. 3d 303, 312 (D. Del. 2021) (rejecting defendant's argument that the complaint should be dismissed pursuant to Rule 12(b)(6) because it "does not identify the specific works that are subject to the copyright claim" and finding that, "[a]lthough a more particularized identification of the specific material that Plaintiffs contend is

---

[3] Spectora attaches copies of the copyright registrations for the Copyrighted Works.  *See* Docket No. 15-3.  Generally, a court should not consider evidence beyond the pleadings when ruling on a 12(b)(6) motion.  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).  However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.* (citation omitted); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  A court has "broad discretion in determining whether or not to accept materials beyond the pleadings."  *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).  ReportHost does not attach copies of the copyright registration to the complaint.  *See* Docket No. 1.  Spectora does not explain why the Court should treat the copyright registration documents as incorporated by reference or why the Court should take judicial notice of the copyright registration documents.  Even if the Court were to take judicial notice of the copyright registration documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein."  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted).  Therefore, even if the Court did take judicial notice of the copyright registrations, the Court would not consider ReportHost's argument that the copyright registrations show that "ReportHost pleads registrations (disclaiming preexisting text) covering 'unpublished' works it says were never publicly available.'"  *See* Docket No. 15 at 6.  The Court exercises its direction to not take judicial notice of copyright registration documents.

copyrighted will be necessary as this case proceeds, the complaint satisfies Rule 8's requirement of a short and plain statement giving Defendant notice of Plaintiffs' claims"); *Home & Nature Inc. v. Sherman Specialty Co.*, *Inc.,* 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) (finding that plaintiff sufficiently identified the specific original works at issue where the complaint listed "the copyright registration numbers issued by the United States that correspond to each of its copyrighted jewelry designs, annex[ed] copies of the United States Certificates of Copyright Registration, and stat[ed] that the defendant has infringed upon one or more of these copyrights"); *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 422 (S.D. Tex. 2023) ("Allegations provide the defendant with notice of the works at issue when the plaintiff alleges a valid registered copyright.").  Accordingly, the Court finds that Spectora sufficiently identifies the Copyrighted Works at issue.

### 2.  *Count I: Copyright Infringement*

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Blehm v. Jacobs,* 702 F.3d 1193, 1199 (10th Cir. 2012) (citation omitted). Because Spectora does not challenge that ReportHost owns a valid copyright, the Court turns to the second element.  ReportHost must allege that Spectora copied "constituent elements of the work that are original."  *See id.*  The second element "determines whether a defendant's factual copying constitutes infringement."  *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016) (citation omitted).  Factual copying exists where, taking together evidence of access and the similarities between the works, it is plausible that the "second work was copied from the first."  *See Gates Rubber Co. v.*

*Bando Chem. Indus., Ltd.*, 9 F.3d 823, 833 (10th Cir. 1993).  Thus, for the "copying element," there are two "components" that ReportHost must allege.  *Antarctica Films Argentina, S.A. v. Gaia, Inc.*, 662 F. Supp. 3d 1191, 1199-1200 (D. Colo. 2023).  First, ReportHost must allege that Spectora "in fact copied portions" of the Copyrighted Works.  *Id.* at 1200.  Second, ReportHost must allege that there is a "substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected."  *Id.* (quoting *Savant Homes, Inc.*, 809 F.3d at 1138).

Spectora argues that ReportHost does not sufficiently plead that Spectora copied the Copyrighted Works because there are no allegations that Spectora had access to the Copyrighted Works.  Docket No. 15 at 6-7.  ReportHost responds that it can demonstrate Spectora had access to the Copyrighted Works through circumstantial evidence and need not plead the exact "method of access."  Docket No. 22 at 5.  "A plaintiff can establish that the defendant copied [its works] either through the presentation of direct evidence or through indirect evidence that shows (1) that the defendant had access to the copyrighted [work], and (2) that there are probative similarities between the copyrighted material and the allegedly copied material."  *Gates Rubber Co.*, 9 F.3d at 832.

Because "[d]irect proof of copying is rare, and plaintiffs will typically rely on the indirect method of proof."  *Id.* at 833 (internal quotation omitted).  ReportHost does not allege that it has direct proof of copying.  *See* Docket No. 22 at 5.  Therefore, the Court will determine whether ReportHost has indirect proof of copying, which requires that ReportHost allege that Spectora had access to the Copyrighted Works and that there

are probative similarities between the copyrighted and infringing works.  *See Gates Rubber Co*, 9 F.3d at 832.

To establish that the defendant had access, the plaintiff can show that the defendant had a "reasonable opportunity to view or an opportunity to copy the allegedly infringed work."  *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009) (citation and alteration omitted).  ReportHost alleges that, if it identifies a Sample Report that contains infringing material, it submits a DMCA takedown request to Spectora.  *See* Docket No. 1 at 10-11, ¶¶ 65-70.  When Spectora receives the request, ReportHost alleges that "Spectora does disable access for some reports relative to the takedown notices."  *Id.* at 10, ¶ 66.  Thus, ReportHost alleges that Spectora acknowledges the DMCA takedown requests and acknowledges that the Sample Reports contained infringing material, which are stored on the Spectora platform. Therefore, the Court finds that ReportHost plausibly alleges that Spectora had access to the Copyrighted Works.

The Court turns to the requirement that ReportHost must allege a probative similarity between the copyrighted and infringing works.  *See Savant Homes, Inc.,* 809 F.3d at 1140.  "Probative similarity is part of the inquiry into whether, as a factual matter, it is more likely than not that the defendant copied from the plaintiff's work: similarities that, in the normal course of events, would not be expected to arise independently in the two works are probative of defendant[s] having copied as a factual matter from plaintiff's work."  *Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1190 (D. Colo. 2016) (internal quotation and citation omitted).

ReportHost claims that Spectora infringed the Copyrighted Works by creating Sample Reports that contain copyrighted material.  *See* Docket No. 1 at 14-15, ¶¶ 103-105.  ReportHost alleges that, "[i]f it is clear that a 'sample report' reproduces the Copyrighted Works verbatim or near-verbatim, and to an appreciable degree, ReportHost drafts and submits a takedown request to Defendant Spectora that is compliant with the Digital Millennium Copyright Act."  Docket No. 1 at 10, ¶ 65. ReportHost alleges that when Spectora receives the DMCA takedown request, Spectora disables access for "some reports relative to these takedown notices."  *Id.*, ¶ 66.  While ReportHost alleges that Spectora does not "immediately disable access for at least some of the 'sample reports,'" ReportHost does not allege that there are Sample Reports that exist on the Spectora platform that contain infringing material.  *See id.* Rather, ReportHost alleges that, when "Spectora receives a takedown notice from ReportHost, Defendant Spectora edits the relevant template and/or report to remove only the content cited by ReportHost but leaves the remainder of the template and/or report intact and available."  *See id.* at 13, ¶ 92.  Because ReportHost alleges that Spectora removed the infringing content from the Sample Reports and related templates, there can be no probative similarity between the Copyrighted Works and the edited Sample Reports.  ReportHost's copyright claims are not based on the material that it flags, and which Spectora ultimately removes, but rather are based on the edited reports that ReportHost makes after removing the infringing content.  *See* Docket No. 1 at 13, ¶¶ 90-93.

Accordingly, ReportHost fails to satisfy the copying element for its copyright infringement claim.  There are no allegations that the infringing material, after Spectora

edits them pursuant to ReportHost's takedown request, are similar to plaintiff's

protected works.  The Court will dismiss Count I without prejudice.

### 3.  Count II: Vicarious Copyright Infringement

"Vicarious liability attaches when the defendant has the right and ability to

supervise the infringing activity and has a direct financial interest in such activities."

*Diversey v. Schmidly,* 738 F.3d 1196, 1204 (10th Cir. 2013) (internal quotations and

citation omitted).  To state a claim for vicarious copyright infringement, a plaintiff must

allege that "(1) a third party infringed the plaintiff's copyright; (2) the defendant had the

ability to control or supervise the third party's infringing activities; (3) the defendant

failed to stop the infringement; and (4) the defendant had a direct financial interest in the

infringing activity."  *Antarctica Films Argentina.,* 662 F. Supp. 3d at 1207.

The Court first turns to whether plaintiff plausibly alleges that third parties,

namely, Spectora customers, infringed the Copyrighted Works.  ReportHost does not

allege how Spectora customers are infringing the Copyrighted Works.  Rather,

ReportHost merely alleges that "Spectora failed to stop Spectora's clients from using,

distributing, publishing, making derivative works, or copying the Copyrighted Works."

Docket No. 1 at 16, ¶ 123.  Although not entirely clear from the complaint, it appears

that ReportHost alleges Spectora customers infringe the Copyrighted Works by

"accessing" or downloading data templates from Spectora and using those templates to

create their own reports.  *See id.* at 8, ¶ 48; *see also* Docket No. 22 at 6 ("It should be

clear that the Complaint identifies Spectora's customers as 'using' ReportHost's

Copyrighted Works to create infringing reports with narratives generally restricted to

ReportHost's platform.").  Therefore, ReportHost alleges that Spectora hosts the

Copyrighted Works on its platform and, by permitting Spectora customers to download templates from the Spectora platform, gives Spectora customers the ability to infringe the Copyrighted Works.

The complaint alleges that "Spectora customers use Copyrighted Works owned by ReportHost by accessing data templates in the Spectora Library."  Docket No. 1 at 8, ¶ 48.  However, it is unclear what material is contained in the data templates that Spectora customers allegedly download from the Spectora Library, and if any of that material is from the Copyrighted Works.  ReportHost alleges that the Spectora Library does not contain "individual templates."  *Id.*, ¶ 47.  Instead, ReportHost alleges that the "individual templates are created by Spectora from the Spectora Template Database when a user downloads or otherwise uses a template from the Spectora Library."  *Id.* The Spectora Template Database contains "content found" in the Spectora Library.  *See id.* at 7, ¶ 40.  However, as ReportHost alleges, Spectora does not "maintain individual templates" in the Spectora Library, making it unclear what content the Spectora Template Database is drawing form the Spectora Library.  *See id.* at 8, ¶ 47. ReportHost alleges that the Spectora Template Database also contains Existing Reports.  *See id.*  As discussed above, ReportHost alleges that Spectora removes infringing material from the Existing Reports when it receives a DMCA takedown request, such that a user who downloads a template based on the Existing Reports would not be downloading infringing material.  *See id.* at 13, ¶ 92.  Therefore, Spectora fails to plausibly allege that a third party infringed the Copyrighted Works, and the Court will dismiss Count II without prejudice.

#### 4.  Count III: Contributory Copyright Infringement

"[C]ontributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement."  *Diversey*, 738 F.3d at 1204.  To state a claim for contributory copyright infringement, a plaintiff must allege that the defendant infringed the plaintiff's copyrights, (2) third parties infringed the plaintiff's copyrights, (3) the defendant induced, caused, or materially contributed to the third parties' infringement; and (4) a causal connection existed between the defendant's inducement and the third parties' infringement.  *See Antarctica Films Argentina,* 662 F. Supp. 3d at 1207.

The Court first turns to whether ReportHost plausibly alleges that Spectora customers infringed the Copyrighted Works.  ReportHost alleges that Spectora customers "reproduced infringing works that were created, published, and stored in Defendant Spectora's platform."  Docket No. 1 at 17, ¶ 132.  ReportHost alleges that Spectora "encouraged or assisted Spectora's Clients in using the 'Google Integration' tool to unlawfully make copies of infringing works."  *Id.* at 18, ¶ 134.  Again, the complaint does not clearly allege how Spectora customers "reproduced" the Copyrighted Works; however, it appears that ReportHost alleges that third partes infringed the Copyrighted Works by downloading templates from Spectora.  *See* Docket No. 1 at 8, ¶ 48.  For the reasons discussed above, ReportHost fails to allege that Spectora customers downloaded templates that contained infringing material.  Because ReportHost fails to allege that third parties infringed the Copyrighted Works, the Court will dismiss Count III without prejudice.

**B. Claims for False or Misleading Statements: Counts IV and V**

ReportHost alleges that Spectora made statements that violate the Lanham Act,

15 U.S.C. § 1125(a), and the CCPA, Colo. Rev. Stat. § 6-1-105.  *See* Docket No. 1 at

19-21.  Spectora argues that ReportHost's Lanham Act claim and CCPA claim should

be dismissed because the complaint does not "identify the time, place, or content of any

statement Spectora ever made to anyone."  Docket No. 15 at 12.  Spectora also argues

that ReportHost fails to allege facts that support the existence of actual consumer

deception.  *See id*.  To the extent that ReportHost seeks to hold Spectora liable for the

comments of "other internet users' statements," Spectora argues that it is immune

pursuant to the Communications Decency Act, 47 U.S.C. § 230(c)(1), (e)(3).  *Id.* at 15-

16.  ReportHost responds that it identifies the time, place, and content of Spectora's

conduct by pointing to allegations in the complaint concerning ReportHost's citation to

"false, subpar narratives."  Docket No. 22 at 12-13.

### 1.    *Count IV: Violation of the Lanham Act*

The Lanham Act provides a cause of action against "[a]ny person who, on or in

connection with any goods or services, . . . uses in commerce . . . any. . . false or

misleading representation of fact" that "is likely to cause confusion, or to cause mistake,

or to deceive as to the affiliation, connection, or association of such person with another

person, or as to the origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person."  15 U.S.C. § 1125(a)(1)(A).

As an initial matter, the Court addresses Spectora's argument that ReportHost

must plead its Lanham Act claim pursuant to Rule 9(b).  *See* Docket No. 15 at 11-13.

ReportHost does not address this issue.  *See* Docket No. 22 at 10-13.  "Rule 9(b)

applies to claims of falsity under the Lanham Act 'insofar as the factual averments
allege intentional or knowing misrepresentations.'"  *Goode v. Rysavy*, No. 20-cv-00742-
DDD-KLM, 2024 WL 3835999, at *9 (D. Colo. Mar. 31, 2024) (quoting *Cocona, Inc. v.
Singtex Indus. Co.*, *Ltd.,* No. 14-cv-01593-MJW, 2014 WL 5072730, at *8 (D. Colo. Oct.
9, 2014)).  Here, ReportHost alleges that Spectora knew which narratives were subject
to deletion for infringement through the settlement agreement or takedown notices that
ReportHost issued.  *See* Docket No. 1 at 9, 10-11, ¶¶ 58, 64-70.  ReportHost alleges
that Spectora represented certain narratives were attributable to ReportHost, despite
knowing that these narratives were not ReportHost content.  *See also id.* at 12, 13, 19,
¶¶ 83, 85, 89, 146-150.  Therefore, Court will determine whether ReportHost's
allegations sufficiently state a Lanham Act claim pursuant to Rule 9(b).

To state a claim under the Lanham Act, a plaintiff must allege (1) defendant
"made a false or misleading description of fact or representation of fact in a commercial
advertisement about its own or another's product;" (2) defendant's "misrepresentation
was material, in that it was likely to influence the purchasing decision;" (3) defendant's
"misrepresentation actually deceived or had the tendency to deceive a substantial
segment of its audience;" (4) defendant "placed the false or misleading statement in
interstate commerce;" and (5) plaintiff "has been or is likely to be injured as a result of
the misrepresentation, either by direct diversion of sales or by a lessening of goodwill
associated with its products."  *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630,
643-44 (10th Cir. 2022) (internal quotations, alterations, and citations omitted); *see also
Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2713954, at *6
(D. Colo. Mar. 30, 2023).

ReportHost alleges that "Spectora informed its consumers that certain subpar narratives in their reports and templates were claimed by ReportHost," even though these "particular narratives were not part of the Copyrighted Works." Docket No. 1 at 19, ¶¶ 146-47. ReportHost claims that Spectora "engaged in the internet message board" where customers "disparaged ReportHost based on the identification of these particular narratives." *Id.*, ¶¶ 148-49. ReportHost alleges that Spectora "did not correct these comments and instead, in that same thread, made additional commentary concerning the settlement with ReportHost and ReportHost suing other parties." *Id.*, ¶ 150.

ReportHost's allegations concerning Spectora's conduct – falsely attributing certain narratives to ReportHost – are insufficient pursuant to Rule 9(b) because ReportHost does not identify the false statements that Spectora made and who from Spectora communicated this information. *See id.* at 11, 12, 19, ¶¶ 72, 74-75, 79, 83, 146, 149-150. Furthermore, while ReportHost states that Spectora's conduct occurred in October 2023 in support of its CCPA claim, ReportHost does not allege when Spectora "informed its consumers that certain subpar narratives in their reports and templates were claimed by ReportHost" in support of its Lanham Act claim. *Compare* Docket No. 1 at 19, ¶ 146, *with* Docket No. 1 at 20, ¶ 159.

The only identifiable statement in the complaint is that of Mr. Wagstaff, which ReportHost fails to allege was an unfair or deceptive practice. *See* Docket No. 1 at 12, ¶ 78. In his statement, Mr. Wagstaff referred to the "Report Host nonsense" and invited customers to "jump on a call" because he did not "want any InterNACHI or Spectora member to go through getting sued." *Id.* ReportHost does not explain how Mr.

Wagstaff referring to ReportHost in derogatory terms and expressing his desire that no

one "go through getting sued" constitutes an unfair or deceptive practice.  More

specifically, ReportHost does not allege that Mr. Wagstaff's statements communicated

to consumers that certain narratives were attributable to ReportHost or that

ReportHost's claims against Spectora were "baseless."  *See* Docket No. 1 at 12, 20-21

¶¶ 83, 159-160.

Accordingly, the Court will dismiss Count IV without prejudice.  *See Goode v.*

*Gaia, Inc.*, No. 20-cv-00742-DDD-KAS, 2023 WL 7190732, at *10 (D. Colo. Nov. 1,

2023), *report and recommendation adopted sub nom. Goode v. Zavodnick*, 2024 WL

1509161 (D. Colo. Mar. 29, 2024) (dismissing Lanham Act claim where "Plaintiffs have

not adequately explained how [defendant's] actions falsely designate origin or falsely or

misleadingly describe or represent facts to cause confusion about designation of origin

or association or to falsely advertise"); *Integrated Bus. Techs., LLC v. Netlink Sols.,*

*LLC*, 2016 WL 4742306, at *5 (N.D. Okla. Sept. 12, 2016) (dismissing Lanham Act

claim where plaintiff "has not alleged who made the false statements, what the false

statements were, when the false statements were made, or specifically why the

statements were false").

### 2.  Count V: Violation of the CCPA

A CCPA claim consists of the following elements: "(1) that the defendant

engaged in an unfair or deceptive trade practice; (2) that the challenged practice

occurred in the course of defendant's business, vocation, or occupation; (3) that it

significantly impacts the public as actual or potential consumers of the defendant's

goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally

protected interest; and (5) that the challenged practice caused the plaintiff's injury."
*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47
(Colo. 2003).  All elements of a CCPA claim must be pled; otherwise, the claim falls as
a matter of law.  *HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d
1115, 1120 (D. Colo. 2011).  CCPA claims must be pled with particularity pursuant to
Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Mayhew v. Cherry Creek Mortg. Co.*,
No. 09-cv-00219-PAB-CBS, 2010 WL 935674, at *14 (D. Colo. Mar. 10, 2010) (citing
*Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (holding that
"allegations of deceptive trade practices under the [CCPA] are subject to Rule 9(b)'s
requirement of particularity")).  Rule 9(b) "requires a complaint to 'set forth the time,
place and contents of the false representation, the identity of the party making the false
statements and the consequences thereof.'"  *HealthONE*, 805 F. Supp. 2d at 1121
(citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

ReportHost alleges that, in October 2023, Spectora "contacted third parties in the
home inspection industry" and "made statements and engaged in particular actions,
namely the citation of particular content in reports" that would indicate to a reasonable
consumer that ReportHost's claims of copyright infringement were "baseless."  Docket
No. 1 at 20-21, ¶¶ 159-160.  ReportHost alleges that Spectora "flagged some content in
some templates and reports hosted on the Spectora platform for deletion, and misled
consumers that this content was claimed by ReportHost even though that content was
not ReportHost content."  *Id.* at 12, ¶ 83.  ReportHost alleges that Mr. Wagstaff posted
an Internet thread entitled "Report Hoes, I mean Report Host nonsense" and invited
customers to "jump on a call with him because he didn't want any InterNACHI or

Spectora member to go through getting sued." *Id.*, ¶ 78 (internal quotations omitted). In this thread and on the same internet message boards, users spoke "derogatorily about ReportHost" and "concerning these narratives." *Id.*, ¶ 84.

The Court first turns to whether ReportHost plausibly alleges a significant public impact. In analyzing the third element, a significant public impact, Colorado courts consider three factors: (1) "the number of consumers directly affected by the challenged practice," (2) the "relative sophistication and bargaining power of the [affected] consumers," and (3) "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings USA, Inc.*, 62 P.3d at 149.

Spectora argues that ReportHost fails to allege facts in support of any of the three factors considered by Colorado courts. *See* Docket No. 15 at 14. Spectora contends that the complaint "lacks allegations of the message board's reach, the number of people exposed to the particular messages or thread on that board, or how either of these figures compares to the size of the market." *See id.* ReportHost responds that there is significant public impact because it alleged that "actual or potential consumers of ReportHost's services may be diverted from subscribing to ReportHost's services." Docket No. 22 at 15 (quoting Docket No. 1 at 21, ¶ 165). ReportHost contends that this allegation is supported by the fact that ReportHost received an email from a consumer, *see id.*, which stated, "I hope and pray you will not be around in the coming years. Please leave the industry. You only harm it. We have already started a petition and have over 1200 signatures for a class action lawsuit. This is going to be fun." Docket No. 1 at 21, ¶ 163.

The Court finds that ReportHost fails to plausibly allege a significant public impact. First, in considering the number of consumers directly affected by the challenged practice, ReportHost fails to allege "more than that a small percentage of the public may have been impacted." *See Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 920 (D. Colo. 2021), *aff'd sub nom. Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238 (10th Cir. 2022). ReportHost alleges that one Colorado resident posted photos of ReportHost's home office and referred to ReportHost as "Report Hoes." *See* Docket No. 1 at 21, ¶ 162. ReportHost further alleges that it received an email from an unidentified sender that referenced a petition and class action lawsuit against ReportHost. *Id.*, ¶ 163. ReportHost alleges that is received an "onslaught of 'one-star' reviews on Google.com.'" *Id.*, ¶ 164. The fact that ReportHost received an unspecified number of negative reviews and that two people spoke negatively about ReportHost does not satisfy Rule 9(b)'s requirement that the consequences of the purported fraud be pled with particularity. *See HealthONE*, 805 F. Supp. 2d at 1121. Furthermore, the "purpose of the CCPA is to protect Colorado consumers," and besides negative pictures allegedly posted by one Colorado resident, there are no allegations that make it plausible Colorado consumers were affected by Spectora's statements. *O'Connor v. BMW of N. Am., LLC*, No. 18-cv-03190-CMA-STV, 2020 WL 1303285, at *6 (D. Colo. Mar. 19, 2020) ("The purpose of the CCPA is to protect Colorado consumers.") (citing *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241–42 (D. Colo. 2010)); *see also Airquip, Inc. v. HomeAdvisor, Inc.*, No. 16-cv-01849-PAB-KLM, 2017 WL 4222618, at *6 (D. Colo. Sept. 21, 2017) (holding that plaintiff failed to demonstrate that the

Colorado legislature intended the CCPA to have extraterritorial effects); *Shostrom v.*
*Ethicon, Inc.*, No. 20-cv-1933-WJM-STV, 2022 WL 2237341, at *2 (D. Colo. June 22,
2022) ("The Court agrees with Defendants' statement that evidence of out-of-state
lawsuits cannot make it more or less probable that the *Colorado* consumers protected
by the Act were harmed." (quotations omitted).

  Furthermore, the Court rejects ReportHost's argument that public impact is
shown by one unidentified person's claim that there is a petition with "over 1200
signatures" for a class action lawsuit.  *See* Docket No. 22 at 15.  ReportHost does not
allege the existence of such a petition or class action, and even if there was,
ReportHost fails to show that that 1200 people supporting a class action demonstrates
that "a large number of consumers in Colorado were directly affected by the challenged
practice."  *See Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1186
(D. Colo. 2002).

  The complaint has no allegations regarding the second and third factors for
significant public impact, which concern the relative sophistication of the affected
consumers and whether there is evidence that the allegedly misleading statements
impacted consumers or has the significant potential to do so in the future.  *See Rhino*
*Linings USA, Inc.*, 62 P.3d at 149.  ReportHost merely alleges, without factual support,
that "Spectora's actions significantly impact the public as actual or potential consumers
of ReportHost's services may be diverted from subscribing to ReportHost's services."
*See* Docket No. 1 at 21, ¶ 165.  This allegation fails to satisfy Rule 8(a)(2) pleading
requirements, let alone Rule 9(b) pleading requirements.  *See Twombly,* 550 U.S. at
555 ("a formulaic recitation of the elements of a cause of action will not do").

Accordingly, ReportHost fails to plausibly allege a significant public impact, and the Court will dismiss Count V without prejudice.

### C. **Spectora's Anti-SLAAP Motion to Dismiss**

Spectora filed a special motion to dismiss Count Five, ReportHost's CCPA claim, pursuant to Colorado's anti-SLAAP law, Colo. Rev. Stat. § 13-20-1101.  Docket No. 16. In 2019, the Colorado General Assembly enacted a statute to discourage strategic lawsuits against public participation (an "anti-SLAPP statute"), codified at Colo. Rev. Stat. § 13-20-1101.  *Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1196 (D. Colo. 2023) (citing *Salazar v. Pub. Trust Inst.*, 522 P.3d 242, 245 & n.1 (Colo. App. 2022)).  "The statute's purpose is 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.'"  *Salazar*, 522 P.3d at 246 (quoting Colo. Rev. Stat. § 13-20-1101(1)(b)).

ReportHost filed a response to Spectora's special motion to dismiss.  Docket No. 23.  Spectora filed a reply.  Docket No.  34.  ReportHost filed a motion for leave to file a surreply in support of its response to "refute . . . newly added and impermissible argument to correct any misunderstanding" raised in Spectora's reply.  Docket No. 35 at 1.  Because the Court finds that ReportHost fails to sufficiently plead Count Five, the Court will deny Spectora's special motion to dismiss as moot.  The Court will also deny ReportHost's motion to file a surreply as moot.

### IV. **CONCLUSION**

Therefore, it is

26

**ORDERED** that Defendant Spectora, Inc.'s Motion to Dismiss Count I-V of the Complaint [Docket No. 15] is **GRANTED**.  It is further

**ORDERED** that Counts I, II, III, IV, and V are **DISMISSED without prejudice**.  It is further

**ORDERED** that Defendant Spectora, Inc.'s Special Motion to Dismiss Count V Pursuant to C.R.S. § 13-20-1101 [Docket No. 16] is **DENIED as moot**.  It is further

**ORDERED** that Plaintiff ReportHost's Motion for Leave to File Surreply in Support of Plaintiff's Response to Defendant Spectora's Special Motion to Dismiss (Dkt. 16) [Docket No. 35] is **DENIED as moot**.

DATED September 17, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge