**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01813-PAB-SBP

REPORTHOST LLC,

Plaintiff,

v.

SPECTORA, INC.,

Defendant.

---

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

---

Defendant Spectora, Inc. opposes ReportHost LLC's Motion for Leave to File an Amended Complaint. The proposed Amended Complaint ("PAC") is futile, and ReportHost waited too long to seek leave to amend.

## I. INTRODUCTION

ReportHost had at least three prior opportunities to amend, including after serving the complaint, after conferral when Spectora identified the complaint's deficiencies before moving to dismiss, and after Spectora filed its motion to dismiss and before the Court rendered its decision. *See* Fed. R. Civ. P. 15(a)(1)(A)-(B); Brimmer, J. Practice Standards § III.F.2.a. Each time, ReportHost declined, and instead it waited for 13 months after Spectora's Motion to seek leave. This delay is reason enough to deny the Motion. But it is not the only reason. The proposed amended pleading is futile because it would not survive a motion to dismiss or summary judgment. The facts alleged in the PAC still fail to state claims for direct or indirect copyright infringement, and they do not support the new breach of good faith and fair dealing

claim. The PAC identifies a single bit of text (a "Narrative") allegedly infringed, but:

- ReportHost does not, and could not, allege that this "Narrative" is covered by its pleaded copyright registrations, which registrations expressly exclude "text"; and
- The pleaded registrations also exclude previously published material, but the allegedly infringed "Narrative" was previously published.

Whether viewed under a Rule 12(b)(6) or Rule 56 standard, all the PAC's copyright claims fail. They also fail because the PAC does not identify any direct infringement, by Spectora or otherwise, and does not allege facts sufficient to support the other elements of vicarious or contributory infringement. These claims are also barred by the parties' Settlement Agreement. The PAC's new breach of good faith and fair dealing claim also fails because the PAC does not identify any terms of the Settlement Agreement under which Spectora could exercise discretion that it exercised in bad faith.

## II. <u>THE PROPOSED AMENDMENT IS UNTIMELY AND FUTILE</u>

ReportHost's Motion for Leave to Amend should be denied because ReportHost has had three prior opportunities to amend and has declined those opportunities, waiting 13 months after Spectora filed its motion to dismiss to seek leave to amend. This is reason enough to deny the Motion, and the Court need not reach the PAC's merits. *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 202 (5th Cir. 2021) (affirming denial of leave to amend where plaintiff sought amendment within 30 days of court's order of dismissal but had waited 11 months for that dismissal to come through; "When parties delay seeking leave to amend for several months after a motion to dismiss is filed, we have held that district courts do not abuse their discretion in denying the request for leave."). But if the Court does consider the PAC on its merits, it should deny the Motion because the PAC would be subject to dismissal

under Rules 12(b)(6) or 56(a) for the reasons outlined below. *Midcities Metro. Dist. No. 1 v. U.S. Bank Nat'l Ass'n*, 44 F. Supp. 3d 1062, 1068 (D. Colo. 2014).

**A. Counts I-III (Copyright Infringement Claims) Remain Insufficiently Pleaded**

Like the original complaint, the PAC also fails to allege facts sufficient to support a copyright infringement claim—whether direct, vicarious, or contributory.

1. Counts I-III Fail Because the Alleged Copyright Registrations Do Not Cover and Exclude the Only Allegedly Copied Material: "Text".

ReportHost's copyright infringement claims (Counts I-III) remain legally insufficient because the pleaded and attached Copyright Registrations exclude any claim to "text," and the PAC does not (and could not) allege that either covers any "Narrative" that was allegedly copied by Spectora or its customers, let alone the one Narrative the PAC identifies.

Both alleged Copyright Registrations, attached as Exhibits A and B to the PAC, state on their faces that the registered copyright claims are limited and that **"text" is expressly "excluded"** from the registered copyright claims. (Doc. 48-2, Exs. A & B.) This is fatal to the PAC's copyright infringement claims, which are based on alleged copying of text alone. *AFL Telecomm. LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 941 (D. Ariz. 2013) (plaintiff could not maintain suit where on its face registration excluded material allegedly copied). Not only do both registrations explicitly exclude "text," the PAC does not even allege that either registration covers any alleged copied Narrative. Carefully worded to avoid such an allegation, the PAC instead alleges only ReportHost's intent: it applied to register its 12 works "in order to protect its copyrights in the Narratives." (Doc. 48-2, ¶¶ 15-17.)

Because the asserted copyright registrations explicitly exclude "text" from their scope, and because the PAC does not allege that any of the text allegedly copied is the subject of a

registered copyright claim, Counts I-III, related to copyright infringement, are futile. 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made"); *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 US 296, 301 (2019) ("Before pursuing an infringement claim in court … a copyright claimant generally must comply with § 411(a)," is a requirement "akin to … administrative exhaustion").

Even if the Court were to presume, contrary to the faces of the Copyright Registrations, that the claims of the pleaded Copyright Registrations include *some* text (*i.e.*, some portion of some "Narratives"), the PAC still would not suffice. The sole example of "a copyrighted Narrative" the PAC alleges anyone copied ("Structures built prior to the mid 1980s may contain lead or asbestos…" (Doc. 48-2,. ¶¶ 18, 52)) ***is not alleged to be claimed*** in either of them. Rather, the PAC only identifies this (unregistered) narrative as being "contained *within* the Commercial Inspection work," which work "is the subject of the 180 Registration." (*Id.* ¶ 18).

This phrasing was no oversight—it was strategic pleading. ReportHost could not have alleged that the sole "Narrative" identified in the PAC was registered. Both Copyright Registrations, which are for **Group[s] of Unpublished Works**, can only cover **unpublished** materials. 37 CFR § 202.4(c) ("(1) All the works in the group must be unpublished … (3) The group may include individual works, joint works, or derivative works, but may not include compilations, collective works, databases, or websites.").[1] And yet, the only "Narrative" identified in the PAC was ***previously published***, by ReportHost to its users, and by its users to

[1] A work is published if it has been distributed to the public or offered for purposes of further distribution or public display. 17 U.S.C. § 101.

their customers.[2] As shown in the Copyright Registrations, ReportHost filed its applications on **March 12, 2020**, but the "Narrative" in question was published long before that. (*E.g.*, Under "General Information" headings, as numbered paragraph "1)" in Ex. 1 (published **October 16, 2018**) and Ex. 2 (published **June 25, 2019)**.) Having been previously published, this Narrative could not fall within the scope of the PAC's registered claims—and if it did, the registrations would be invalid. *See Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 570-574 (S.D.N.Y. 2016) (dismissing infringement claims where group registration did not cover allegedly copied, but previously published material); 17 U.S.C. §§ 103(b), 409(9) (copyright in a derivative work does not extend to "preexisting material employed in the work"); 37 C.F.R. § 202.4(c); Compendium of U.S. Copyright Office Practices[3] § 621.1 ("A registration … does not extend to any unclaimable material that may appear in that work. For purposes of registration, unclaimable material includes … Previously published material."), § 621.8(B) ("If the applicant intends to register a work that contains an appreciable amount of unclaimable material, the applicant should exclude that material from the claim."), § 621.4 ("if the applicant intends to register a work that contains an appreciable amount of material that was published at any time before the application is submitted, the applicant should exclude that previously published material from the claim").

---

[2] Contrary to the PAC's allegations (PAC, ¶ 27), ReportHost's Terms of Use explicitly encourage its users to publish reports with those narratives, the very purpose of ReportHost's software. *See* Ex. 4 (Terms of Use dated 3/15/2010, accessed 05/18/2018, stating "**Appropriate Use:** ReportHost is intended as a report publishing service."; "**Appropriateness of report content**: The ReportHost service is intended to allow home inspectors to publish … reports ...").

[3] *Available at* https://www.copyright.gov/comp3/docs/compendium.pdf.

The PAC does not identify any other "Narrative" that anyone allegedly copied. And to the extent ReportHost contends that some other "Narrative" is the subject of the Copyright Registrations—even though those Registration explicitly exclude "text"—the PAC fails to identify any such Narrative, and instead refers to "Narratives" only vaguely. But "Courts have repeatedly rejected the use of the type of conclusory and vague allegations pleaded by Plaintiff as a substitute for allegations that specify the original works that are the subject of a copyright claim." *Cole v. John Wiley & Sons, Inc.*, No. 11 CIV. 2090 DF, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (collecting cases); *see also id.* at *13 (finding allegations that "[u]pon information and belief, … Defendant … made unauthorized uses of [Plaintiff's] [unspecified] images that it obtained from" a third party "deficient because they do not include any statement of 'by what acts during what time the defendant infringed Plaintiff's copyright'" (cleaned up)); *Gajo v. Chicago Brand*, No. 17-CV-00380-EMC, 2017 WL 2473142, at *2 (N.D. Cal. June 8, 2017) ("Defendants' motion to dismiss the copyright claims is granted because it is not clear what the copyrighted works are in the first instance and whether they have been registered."). Said another way, the PAC fails Rule 8(a)'s requirement to provide Spectora sufficient notice of any claim against it, because it does not identify any original, registered material allegedly copied. *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012); *Art of Design, Inc. v. Pontoon Boat, LLC*, No. 3:16-CV-595-JD, 2017 WL 3608219, at *4 (N.D. Ind. Aug. 22, 2017).[4]

[4] The Copyright Registrations were not included in the original complaint, so the Court was not willing to consider them in connection with Spectora's motion to dismiss that complaint. Now that the PAC does include them, the Court may consider them as integral to and incorporated by reference in the PAC.

Absent a validly registered copyright claim that covers the original material allegedly copied, that is identified sufficiently to give Spectora notice of what and when that material was allegedly copied (none of which ReportHost can plead), ReportHost's copyright infringement claims—direct, contributory, and vicarious—fail. 17 U.S.C. § 411(a); *Fourth Estate*, 586 US at 301. The Court should deny ReportHost leave to file them.

2. Counts I-III Are Barred By the Parties' Prior Settlement Agreement.

Even if the sole identified Narrative in the Report alleged to exist on Spectora's system as of October 3, 2025 (Doc. 48-2, ¶ 52), was copyright registered (it is not), the PAC fails to identify when the report containing that Narrative was created on Spectora's systems. No matter, the claims fail anyway. If the Report was created ***before*** the parties' Settlement Agreement (Doc. 15-1), then ReportHost's claims fail because they were released and are barred by *res judicata*. (*Id.* § 7 ("ReportHost Releases and Covenants Not to Sue")); D. Colo. Case No. 1:22-cv-00457-DDD-SKC, Doc. 42 (Joint Stipulation for Dismissal With Prejudice); *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1162 (10th Cir. 2007) (dismissal with prejudice triggers *res judicata*). If the Report was created ***after*** the Settlement Agreement, while the claim might also fail by reason of *res judicata*, at a minimum it fails because the PAC does not allege ***that ReportHost complied*** with the Settlement Agreement's mandatory pre-suit notice and cure requirements by providing Spectora with a DMCA-compliant takedown notice for that specific Report. (*See* Doc. 15-1, § 6 "DMCA: Notice and Cure"). Either way, ReportHost's only identifiable infringement claim is barred by the Settlement Agreement.

3. Count I Fails Because It Does Not Identify Any Acts of Direct Infringement by Spectora.

Count I is also legally insufficient because the PAC does not allege that ***Spectora itself***

caused unauthorized copies to be made of any copyright-registered Narrative. ReportHost's PAC alleges Spectora's customers use Spectora's website to create, upload, and share their inspection reports and templates through Spectora's systems (*e.g.*, Doc. 48-2, ¶¶ 29, 32-33, 37). Though phrased ambiguously to make it seem, at first blush, as if Spectora "makes" or "copies" some non-registered and unspecified "Narratives", the PAC's diagrams make clear Spectora is alleged only to provide an internet-based report writing platform that carries out user-directed activities (*id.*, ¶¶ 36, 38). Absent a volitional act of infringement caused directly by Spectora itself, though, there is no direct infringement. *E.g.*, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (copyright infringement requires volitional conduct; "automatic copying, storage, and transmission of copyrighted materials, when instigated by others, do[] not render a [service provider] strictly liable for copyright infringement") (quoting cases); *Millennium Funding, Inc. v. Priv. Internet Access, Inc.*, No. 21-CV-01261-NYW-SKC, 2022 WL 7560395, at *11-15 (D. Colo. Oct. 13, 2022) ("*direct* liability must be premised on conduct that can reasonably be described as the *direct* cause of the infringement"; activity by an internet service's users are not sufficient for direct liability) (quoted reference omitted). Count I therefore fails for this additional reason.

4. <u>Counts I-III Fail Because the PAC Establishes that Spectora Is Immune from Liability under the Digital Millennium Copyright Act.</u>

For similar reasons, the PAC also establishes Spectora as a "service provider" under the Digital Millennium Copyright Act, *see* 17 USC § 512(k)(1), and that Spectora is immune from liability for infringement damages. As established, the PAC alleges that Spectora's customers use Spectora's internet service to create, upload, and share templates and reports (*e.g.*, Doc. 48-2, ¶¶ 36, 38). It is that ***user-directed*** storage and transmission that ReportHost takes issue with. But

as also established above, the PAC does not allege that ReportHost provided a valid DMCA infringement notification, and (as elaborated below) does not allege facts (as opposed to conclusory statements) establishing that Spectora: had "actual knowledge" of any specific instance of infringing content; "receive[s] a financial benefit directly attributable to the infringing activity"; "has the right and ability to control such activity"; or, upon the receipt of a valid notification, failed to "respond[] expeditiously to remove, or disable access to, the [noticed material]." 17 USC § 512(c)(1).[5] As proposed, the PAC establishes a total defense and no exceptions. Counts I-III fail.

5. <u>Count II Fails Because the PAC Does Not Identify Specific Acts that Spectora Knew to be Infringing and that it Encouraged.</u>

Like all the PAC's copyright claims, Count II fails because the PAC does not identify even a single direct infringement. But ReportHost's PAC also fails to allege that Spectora had both *knowledge of* any specific infringing act <u>and</u> that it "induced, caused, or materially contributed to" that direct infringement. *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 12-CV-02240-PAB-DW, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013) (Brimmer, J.) (dismissing claims) (quotation marks and citations omitted). The PAC alleges only in general terms that Spectora is liable for contributory infringement because it "facilitated and continues to facilitate its customers' infringing conduct" by encouraging customers to use Google Drive to save copies

[5] The PAC alleges, falsely, that "Spectora has admitted that it did not timely comply with at least one of the DMCA takedown notices submitted by ReportHost." (Doc. 48-2, ¶ 83.) However, the PAC does not allege the factual predicates to establish that this notice was valid under the DMCA, and does not allege that Spectora failed to "respond[] expeditiously." As ReportHost knows, Spectora immediately responded to remove the material identified, and Spectora did remove it.

of unspecified reports containing unspecified Narratives. (Doc. 48-2, ¶¶ 105-106.) These conclusory allegations don't cut it. Like the original complaint, the PAC does not identify even one instance of a direct infringement that occurred through a Google Drive integration, let alone an instance that Spectora encouraged knowing its user would be infringing. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-937 (2005). Nor does the PAC identify any clear expression or affirmative act by which Spectora intended to *and did induce* infringement. *See, e.g.*, *id.*; *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) ("The 'improper object' of infringement 'must be plain and must be affirmatively communicated through words or actions[.]'") (quoted reference omitted). The PAC's general assertions, on information and belief, that someone infringed something, and that Spectora somehow encouraged that result, are pure conjecture and entitled to no weight. Without "factual allegations describing [specific] instances of [Spectora] encouraging or promoting third parties *to infringe* [ReportHost's unidentified works], the PAC does not permit the Court to infer more than the mere possibility of [Spectora's] misconduct." *Viesti Assocs.*, 2013 WL 4052024, at *7.

6. Count III Fails Because the PAC Does Not Allege Direct Profit from Infringement.

For vicarious liability, the PAC must allege facts demonstrating "that (1) a third party infringed the plaintiff's copyright; (2) the defendant had the ability to control or supervise the third party's infringing activities; (3) the defendant failed to stop the infringement; and (4) the defendant had a direct financial interest in the infringing activity." *Millennium Funding, Inc.*, 2022 WL 7560395, at *6. Like Counts I and II, Count III fails because it does not plead any direct infringement of a registered work. The PAC also fails all the other elements of vicarious infringement. "[T]he crux of the financial benefit inquiry is whether a causal relationship exists

between the infringing activity and a financial benefit to the defendant," meaning that "the financial benefit to the defendant … flow[]s directly from the third party's acts of infringement." *Sony Music Entm't v. Cox Comm., Inc.*, 93 F. 4th 222, 232-33 (4th Cir. 2024) (internal citations omitted). That a defendant profits from offering services to customers in general, and that those customers, in turn, use those services to infringe, is not sufficient; the infringement must itself directly benefit the defendant. *Id.* at 233. But the PAC alleges only in conclusory terms that Spectora has a financial interest in that "Spectora's customers pay Spectora to use Spectora's software applications." (Doc. 48-2, ¶ 116.) That's not enough. Count III fails.

7. Count III Fails Because the PAC Does Not Allege a Right/Ability to Supervise or Control Infringing Activity or that Spectora Failed To Do So.

The PAC alleges that Spectora "has the right to supervise and control the infringing acts of its customers on its website," a conclusion it bases entirely on an excerpt from Spectora's Terms of Use (https://www.spectora.com/terms/), which states: "We reserve the right in our sole discretion to remove or edit any content and to terminate your Account for any reason". (*Id.* ¶ 115) The PAC also alleges in broad, conclusory terms, that Spectora "was aware of" and "failed to stop" Spectora's customers' infringement. (*Id.* ¶ 118.) But the PAC does not identify any direct infringement by its users, let alone any that Spectora failed to remedy. The PAC also does not allege that Spectora had **both** *the legal right and practical ability* to control the independent conduct of individuals who happen to use its software. *E.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F. 3d 1146, 1173 (9th Cir. 2007) ("a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so"). Spectora's Terms of Use establish only a contractual right to terminate an account or remove content *after* infringement has occurred. But an *ex post* right

is not the same as the legal right or practical ability to supervise or control these third parties' acts so as to give rise to vicarious liability. *See, e.g.*, *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1227 (2023); *Viesti Assocs.*, 2013 WL 4052024, at *8. Finally, even if Spectora could somehow be found to have some sort of supervisory right and ability to control its users, it has taken acts to prevent and remedy alleged infringement. As its Terms of Use also state, its users are prohibited from uploading infringing material. *See* Ex. 3 (Section 9 "Code of Conduct": "You are prohibited from posting or otherwise communicating to us, or any other user: … (c) material that … infringes on any right of a third party including (i) copyright…"). And Spectora has responded to infringement notices by removing allegedly infringing material. (Doc. 48-2, ¶ 84; *see also* Doc. 1, ¶ 66.) Count III fails.

**B. Counts IV and V (Breach of Contract/Good Faith Fair Dealing) are Duplicative and Count V Fails Because Spectora Had No Discretion.**

1. <u>Count IV Should Be Repleaded as Stand-Alone Claim.</u>

Spectora does not oppose, in theory, ReportHost's request to re-plead its breach of contract claim (even though that claim also will ultimately fail on the merits), because the original complaint is unanswerable in its present state due to the dismissal of prior counts I-V. And though it remains unclear whether the Court has subject matter jurisdiction to hear this claim alone, Spectora submits that ReportHost should be required, if it can, to replead its breach of contract claim as the sole claim in any new pleading, without excess allegations.

2. <u>Count V Fails Because Spectora Did Not Have Contractual Discretion</u>

"A party breaches the implied duty of good faith and fair dealing by using the discretion conferred by [a] contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *Veolia Water Technologies, Inc. v. Antero*

*Treatment LLC*, 564 P.3d 1089, 1109 (Colo. App. 2024) (internal quotations, alterations, and citations omitted). "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015) (quoting *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006)); *Kaspryzk v. PNC Bank, Nat. Ass'n*, 2013 WL 3895069 (D. Colo. 2013) (the doctrine applies only where a party has "discretionary authority to determine certain terms of the contract, such as quantity, price, or time."). The implied covenant cannot contradict or vary the terms or conditions for which a party has bargained. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). Nor can it be used to inject new substantive terms or conditions into a contract. *Soderlun v. Public Service Co.*, 944 P.2d 616 (Colo. App. 1997).

Count V fails because ReportHost has not alleged any term of the Settlement Agreement that gives Spectora discretion that Spectora abused. The closest the PAC comes is to state the conclusion that Spectora "had discretion concerning its means of deleting certain material on its platform" under the Settlement Agreement (Doc. 48-2, ¶ 136). But nothing in the PAC alleges (or could allege) that the "means" Spectora used to delete material from its platform (whatever "means" means) allowed Spectora discretion to delete or not delete that material, or when it needed to do so. To the contrary, the Settlement Agreement explicitly required Spectora to delete specific material by a certain date (Doc. 15-1, § 4(a)), and whether Spectora did or did not do so (it did) is the subject of ReportHost's claim for breach of express contract. This is not the kind of discretion as to a material term (e.g., "quantity, price, or time") that gives rise to a breach of implied covenant claim.

Moreover, while the PAC alleges three purported breaches of the implied duty of good faith and fair dealing, the PAC fails to connect any of these examples to any specific term of the Settlement Agreement that allegedly provides Spectora discretion. For example, the PAC alleges that Spectora breached its implied duty of good faith and fair dealing under the Settlement Agreement by failing to correct and thereby causing consumers to wrongly believe the content Spectora deleted pursuant to the Settlement Agreements was content ReportHost claimed, and by encouraging customers to use the Google Drive integration tool and providing them with the date their flagged reports would be deleted. (Doc. 48-2, ¶¶ 138-140.) But nothing in the Settlement Agreement obligates Spectora to cause its users to believe anything about ReportHost at all, nothing in the Settlement Agreement says anything about whether Spectora could or could not inform its user base (as it had done for years with no connection to the parties' disputes) about the technology available to them (i.e., Google software), and nothing says Spectora could not inform its users that their flagged reports would be deleted. The implied covenant cannot be invoked to create from whole cloth obligations or restrictions never agreed upon and not found in the Settlement Agreement. *Soderlun*, 944 P.2d at 616.

Further, to the extent the PAC alleges anything about the Settlement Agreement's terms related to what Spectora could or could not tell its users, the PAC alleges that the Settlement Agreement gave Spectora ***no discretion at all***. Instead, the PAC alleges there was "specific, exclusive language" that Spectora was required to use "when making public reference to the resolution of the" prior litigation. (Doc. 48-2, ¶¶ 63, 64.) That nondiscretionary term is the subject of ReportHost's breach of express contract claim. Proposed Count V fails.

## III. CONCLUSION

The Court should deny ReportHost's Motion for Leave to Amend.

DATED this 30th day of October, 2025.

Respectfully submitted,

By: s/Benjamin N. Simler

***Matthew A. Morr***
Ballard Spahr LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.299.7366
Facsimile: 303.296.3956
Email: morrm@ballardspahr.com

***Lynn E. Rzonca***
***Benjamin N. Simler***
***Caryn C. Borg-Breen***
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
Email: rzoncal@ballardspahr.com
Email: simlerb@ballardspahr.com
Email: borgbreenc@ballardspahr.com

***Attorneys for Defendant Spectora, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2025, a true and correct copy of the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT** was electronically filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

- evodde@grayice.com, cniemeier@grayice.com, jkelly@grayice.com, mrennirt@grayice.com
- rjt@grayice.com, cniemeier@grayice.com, eporter@grayice.com, mrennirt@grayice.com
- jraff@grayice.com, litadmin@grayice.com

By: *s/Benjamin N. Simler*

***Benjamin N. Simler***
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
Email: simlerb@ballardspahr.com
***Attorneys for Defendant Spectora, Inc.***